THE STATE v. LINZY BUNYARD, Appellant.

Division Two, December 9, 1913.

1. MAYHEM: Information.  An information charging that Linzy Bunyard "on the 2nd day of Nov., 1912, in the county of Douglas and State of Missouri, in and upon one Emmet Yoeman, on purpose and of his malice aforethought, unlawfully and feloniously did make an assault, and the said Linzy Bunyard with a knife, the nose of the said Emmet Yoeman, on purpose and of his malice aforethought, then and there unlawfully and feloniously did cut and slit with intent him the said Emmet Yoeman, then and there and thereby to maim and disfigure," uses all the essential statutory words, with other allegations, necessary to charge the offense of mayhem.

2. ———: Instruction: Broader Than Charge.  An instruction in a mayhem case telling the jury that if the defendant did cut the other party with "the intent to kill, maim and dis- figure" him, etc., is broader than the information charging that defendant did assault him with "intent to maim and disfigure" him; but the addition of the word "kill" did not affect the substantial rights of the defendant; in fact, it placed an additional burden upon the State; and that the jury was not misled by it is shown by their verdict finding "defendant guilty as charged in the information."

3. ———: ———: ———: When Error.  The rule that in- structions must not be broader than the indictment is limited to cases in which it appears that the added words either misled the jury, or by their terms were calculated to mislead them, or were used in an attempt to cure a defective indict- ment.  Where the expanded instruction places a greater burden upon the State than the law requires to sustain a convic- tion, the rule cannot be successfully invoked by defendant; nor can it be invoked as prejudicial in those cases in which the added words may be rejected as surplusage because in- applicable under the charge.

4. ———: ———: On Self-defense.  If there is any evidence authorizing instructions on self-defense in a mayhem case, such instructions should be given; and if given, and found to be prejudicial, they will authorize a reversal.  But if, on the contrary, the facts do not justify an instruction on the subject, appellant will not be heard to complain that the instruction was improperly framed, if he was not thereby injured.  And in this case, although an instruction telling the jury in effect that if defendant sought or brought on the

difficulty or voluntarily entered into it, he cannot justify himself under the law of self-defense, was erroneous in not stating the intention with which he entered into the difficulty, it was not reversible error, because there is no substantial evidence to sustain the theory of self-defense.

5. SCHOOL TEACHER: Preservation of Order at Entertainment. A school teacher, in charge of an entertainment held in the schoolhouse, at night, for the entertainment of the people of the neighborhood, in the absence of any showing that a director was present, was clothed with sufficient power at least to eject from the house a ruffian who sought to enter for the avowed purpose of disturbing the meeting.

Appeal from Douglas Circuit Court.—*Hon. John T. Moore,* Judge.

AFFIRMED.

*J. S. Clarke* for appellant.

(1) Defendant is charged with the specific offense of mayhem with the intent to maim and disfigure, and not with the intent to kill, maim and disfigure under Sec. 4480, R. S. 1909. One could be convicted of mayhem with intent to kill, and without any intent to maim and disfigure, and *vice versa;* so the statute creates, in a sense, two separate and distinct offenses. And in this case it was improper to give to the jury instruction numbered one. State v. West, 12 Mo. App. 309; State v. Wilson, 88 Mo. 13; State v. Lewis, 118 Mo. 79; State v. Kyle, 177 Mo. 659; State v. Scullin, 185 Mo. 709; State v. Meadows, 106 Mo. App. 604; State v. Moore, 178 Mo. 348. (2) The instruction on the law of self-defense, given by the court is erroneous, and is not the law of self-defense. It is not broad enough, and is otherwise unfair to the defendant. Nichols v. Winfrey, 90 Mo. 403; State v. Tooker, 188 Mo. 446; State v. Shoutz, 25 Mo. 152. If it can be said from the evidence that defendant sought and brought on the difficulty, by walking up the steps cursing "promiscuously" as Yoeman says, this cannot be construed to mean that

defendant was about to assault Yoeman or do him some great bodily harm, and does not authorize the giving of instruction number 9 as to the fact of defendant seeking and bringing on the difficulty. State v. Walker, 196 Mo. 85; State v. McDaniel, 94 Mo. 301; State v. Tabor, 95 Mo. 585; State v. Goddard, 146 Mo. 177; State v. Patterson, 159 Mo. 560; State v. Edwards, 203 Mo. 539; State v. Smith, 125 Mo. 2; State v. Stiltz, 97 Mo. 20. (3) It was error for the court to give instruction number 11, on the theory that the prosecuting witness had a right to use such force as he deemed necessary to preserve the order of the meeting. This would give the prosecuting witness more power than he could lawfully exercise over his pupils as their licensed and employed teacher of the school. No such power exists in the teacher of a school holding a box supper at the schoolhouse at night when there is no school in session. By holding a box social a school teacher could constitute himself a peace officer. Cook v. Neeley, 143 Mo. App. 632.

*John T. Barker*, Attorney-General, and *Thomas J. Higgs*, Assistant Attorney-General, for the State.

(1) The information follows the statute and is in form approved by this court. Sec. 4480, R. S. 1909; Kelly's Criminal Law and Practice (3 Ed.), sec. 563; State v. Kyle, 177 Mo. 659; State v. Nerzinger, 220 Mo. 36. (2) Instruction number 1 follows the statute and the information, and is in form approved by this court. Sec. 4480, R. S. 1909; State v. Ma Foo, 110 Mo. 13; State v. Nerzinger, 220 Mo. 52. (3) Instruction number 10 is an instruction as to self-defense. It is in a short and concise form, yet contains all the necessary elements of self-defense when considered with the other instructions, and has been often approved in substantially the same form. State v. Gee, 85 Mo. 647; State v. Grant, 152 Mo. 56; State v. Maupin, 196 Mo. 175. (4) Instruction numbered 9 is good when taken

in connection with the other instructions, and in form has been substantially approved by this court. State v. Partlow, 90 Mo. 608; State v. Davidson, 95 Mo. 156; State v. Hardy, 75 Mo. 457; State v. Thomas, 78 Mo. 339; State v. McCullum, 119 Mo. 469; State v. Harold, 133 Mo. 76; Kelly's Criminal Law and Practice (3 Ed.), 521. A similar instruction has been given in a case for assault and battery in the State of Wisconsin. Holmes v. State, 124 Wis. 133. A similar instruction has been given in the State of Alabama. Johnson v. State, 136 Ala. 76. However, it has generally been held in cases of murder that this instruction, to be effective, should state that the defendant brought on the difficulty for the purpose of "taking advantage of the deceased" or "taking his life" or of "doing him great bodily harm" or "committing a felony." State v. Gieseke, 209 Mo. 345; State v. Goddard, 146 Mo. 191; State v. Sharp, 233 Mo. 269; State v. Heath, 237 Mo. 255. While the above phrases, or similar ones, may be necessary to make the instruction good in cases of murder, in cases of assault and battery, assault with intent to kill, manslaughter and mayhem, no cases can be found that insist upon the above words being inserted in the instruction. The evidence to sustain the above instruction was ample. It was sufficient to warrant the giving of the instruction. (5) The evidence tended to show that the prosecuting witness was in charge of the meeting, was in fact assisting in conducting the program and participating in it. The meeting was held in the county schoolhouse in which the prosecuting witness was the teacher and of which he had charge. Under the circumstances, he had the duty placed upon him of keeping order and could use the necessary force in so doing. Ickenroth v. Transit Co., 152 Mo. App. 597; State v. Roan, 122 Iowa, 136.

WALKER, J.—On an information filed by the prosecuting attorney of Douglas county, charging the

appellant with mayhem under the provisions of section 4480, Revised Statutes 1909, he was convicted and sentenced to five years' imprisonment in the penitentiary, from which he appeals; upon the perfecting of his appeal, he entered into a recognizance which was approved by the trial court.

The evidence on behalf of the State was substantially as follows:

During the month of November, 1912, a young man named Emmet Yoeman was teaching school at Walnut Grove schoolhouse, a few miles from Ava, in Douglas county. On the night of the 2d of November an entertainment was given at the schoolhouse, which was conducted by Yoeman, the appellant, a large number of others being present. The appellant was heard to say at a livery barn in Ava the afternoon before the entertainment that he was going there that night and "tear it up." After the entertainment had commenced, while two little girls were singing, accompanied by Yoeman on the violin, appellant went upon the stage in the rear of the singers and began to sing; upon Yoeman's looking at him he went off the stage shaking his fist at the latter; later while the selling of boxes, a part of the entertainment, was in progress, a disturbance occurred in the rear of the schoolhouse, among some boys, and several of them were ejected from the room. As Yoeman went towards the rear door, appellant came up the steps cursing, and took hold of Yoeman and the latter gave him a shove, shutting the door. After the door was closed, a brother of appellant, who had been guarding the door with Yoeman, said, "Let's open the door, we can keep them out with it open." Yoeman then opened the door and stepped back. The appellant came up the steps the second time, cursing as he came, saying, "Is that you, Yoeman?" or "G—d—n you, Yoeman," and as he said this he cut Yoeman across the face. The cut extended across Yoeman's nose and one cheek, severing his nose from his face

with the exception of a little skin on one side, causing his nose to drop over on his cheek. Yoeman and the appellant then clinched and fell between some desks at the rear of the school room, Yoeman being on top; as they clinched, Yoeman gripped the wrist of the hand in which appellant held the knife with which the latter had done the cutting, and did not release his hold thereon until they were separated. Yoeman was then taken to the front of the school room bleeding profusely; appellant, who was being held, again sought to reach Yoeman, saying with an oath, "G— d—n Yoeman, I will finish him while I am at it." Appellant was restrained, however, from further assaulting Yoeman, by one Alt Turner and his brother. Turner testified that he saw the appellant have a knife in his hand at the time, which he took away from him. Turner kept the knife and it was exhibited in evidence at the trial. A witness for the defense, named Homer Martin, saw appellant start into the schoolhouse with his knife open, when witness said to him, "Linzy, don't go in there with your knife open, I am a friend to you and you had better not do that." To which appellant replied, "I know you are my friend but I am going in there—I am going in there to stop that thing." This witness says he saw appellant fall off of the steps on his back; that after falling appellant arose and again went up the steps and entered the schoolhouse.

Two doctors, who arrived several hours after the cutting, found Yoeman in the care of some young ladies; he was very weak from the loss of blood, and his wounds are described as one across the face and nose, another above the ear, and another on the back of the head. His nose lacked but little of being cut off, being held on by a quarter of an inch of skin on the right side. These doctors also testified that there were no large arteries severed by the cut across the face, and that blood would not flow therefrom immediately after the infliction of the wound; that probably twenty seconds

State v. Bunyard.

or more might elapse before the wound would commence to bleed.

The evidence on the part of the defense is to the effect that when Yoeman went to quiet the disturbance in the rear of the schoolhouse appellant was pushed out of the door and fell; that it was Yoeman who pushed him out, saying, "Get out; we are going to have this stopped;" that immediately after appellant struck Yoeman across the face; that before they clinched, no blood was seen on Yoeman's face and no knife in the hand of the appellant; that after they clinched and fell, appellant yelled, "Pull him off, he is cutting me;" that while certain witnesses were separating the two, one of them was struck over the eye by one of Yoeman's hands and he received a cut, whether it was by the hand that was holding appellant's wrist is not stated; this same witness, however, testified that he saw a knife in appellant's hand at the time and that Yoeman was holding the wrist of that hand when they separated them; that after they were separated and Yoeman had been taken to the front part of the house, a woman testified that she took hold of the appellant and he told her to get back, that he meant to cut him; that some one said about this time, "Emmet [Yoeman] is cut mighty bad," and another said, "He is cut all to hell;" whereupon appellant said, "I am the man that done it." There was testimony that appellant was under the influence of liquor. He denied making any statements at the livery barn in regard to going to the schoolhouse, and that he had had any words or difficulty with Yoeman before the latter pushed him out of the schoolhouse; that when he fell Yoeman said, "I am putting all the drunk men out of the house;" that Homer Martin told appellant not to go into the house with his knife open, and he put it in his pocket; that when he started into the house the second time he said to Yoeman, "Emmet, you are the man that pushed me out of

the door;'' to which the latter replied, "Yes, I am;'' that it looked as though Yoeman was going to give him another shove and appellant then struck him; that they clinched and went down, and immediately Yoeman began cutting the appellant, and the latter yelled to take him off; that appellant did get his knife out of his pocket while down, and opened the knife with his teeth and cut Yoeman in the face; that they then began to pull Yoeman off of him; that appellant's finger was marked up with four or five slashes; that he was cut on the ear, and there were four or five stabs on his head, and that these wounds were bleeding so he could hardly see.    Appellant further testified that he was a man thirty-five years old; that he had been convicted of and pleaded guilty to gambling so many times that he could not remember them all; that he had procured a pint of whiskey (by other witnesses stated to be a quart), and had been drinking in the barn at Ava, and when he left town he had a half pint and was a little full.    He admitted he did the cutting and did not know anyone who saw Yoeman have a knife before or during the difficulty.

In rebuttal it was shown that Yoeman had no knife; that no one saw any wounds on the appellant that night; and that the only person wounded was Yoeman.    It was also shown that a few days after the difficulty one of the witnesses saw appellant and said, "Where are your wounds?" to which appellant said, "I got a cut or two," but none were to be seen.

The jury has determined as to the weight of the evidence, which we have no hesitancy in saying is ample to sustain the verdict.    The foregoing somewhat prolix statement of the facts has, therefore, been made only that the color and current of the entire transaction may be fully set forth.

I.    *The Information.*    The sufficiency of the information is questioned.    Omitting the formal parts, it is as follows:

"That Linzy Bunyard on the 2, day of Nov. 1912, in the county of Douglas and State of Missouri, in and upon one Emmet Yoeman, on purpose and of his malice aforethought, unlawfully and feloniously did make an assault, and the said Linzy Bunyard with a knife, the nose of the said Emmet Yoeman, on purpose and of his malice aforethought, then and there unlawfully and feloniously did cut and slit with intent him the said Emmet Yoeman, then and there and thereby to maim and disfigure, against the peace and dignity of the. State."

The information is not subject to valid objection. It uses all the essential statutory words, with other allegations, necessary to clearly charge the offense of mayhem. This is all that is required. [Sec. 4480, R. S. 1909; State v. Nerzinger, 220 Mo. 36, 47; State v. Kyle, 177 Mo. 659, 661.] The rulings of courts of last resort in other jurisdictions upon indictments framed under similar statutes are of like import. [Kitchens v. State, 80 Ga. 810; Guest v. State, 19 Ark. 405; State v. Absence, 4 Port. (Ala.) 397.]

II. *Evidence.* The court's rulings on the admission and exclusion of testimony disclose no error upon which can be based a substantial claim of prejudice; in fact, appellant does not so contend, his assignments being confined, aside from an objection to the sufficiency of the information, to alleged errors in the instructions.

III. *Instruction: Broader than Charge.* Instruction numbered 1, given by the court, is complained of as being broader than the information. The instruction is as follows:

"1. If you find from the evidence that Linzy Bunyard, in the county of Douglas and State of Missouri, at the time and place mentioned in the information, did feloniously, on purpose and of his malice aforethought make an assault on one Emmet Yoeman with a knife,

a dangerous and deadly weapon and cut the nose of the said Emmet Yoeman with the felonious intent to kill, maim or disfigure the said Emmet Yoeman, you will find the defendant guilty of mayhem and assess his punishment at a term in the state penitentiary not less than two years nor more than twenty-five years."

Comparing this instruction with the information it will be seen that the former is framed in the language of the statute, in charging the assault as having been committed with the intent to "kill, maim or disfigure," while in the information the offense is limited in its terms to an assault with intent to "maim and disfigure." Appellant's contention is that the jury was misled by the instruction and as a consequence the defendant was found guilty of an assault with intent to kill, instead of an assault with intent to maim and disfigure.

It is apparent that the instruction is broader than the information; but, were the substantial rights of the appellant thereby affected? If this cannot be readily determined, then appellant has not been tried as the law directs, and injury must be presumed unless the record shows to the contrary; if, however, the record does so show, the judgment should not be disturbed for the law gives no redress for a wrong not resulting in an injury. The best record test as to the manner in which this instruction was considered by the jury is the verdict. It is as follows: "We, the jury, find the defendant guilty as *charged in the information* and assess his punishment at five years' imprisonment in the State penitentiary." It will be noted that the verdict by its express terms finds the appellant guilty as *"charged in the information,"* from which it is evident that the jury either interpreted the words "to kill" in the instruction as placing an additional burden on the State before the appellant could be found guilty of an assault to maim and disfigure, or that the words in question were rejected as surplusage. Upon either

theory the jury was not misled and appellant has suffered no injury in this regard. The rule that instructions must not be broader than the indictment or information is limited to cases in which it appears that the added words either misled, or, by their terms, were calculated to mislead the jury; or, in which it was attempted by the added words to cure a defective indictment or information, as in State v. Kyle, 177 Mo. 659, 664, and State v. Smith, 119 Mo. 439, 447, and not as in the case at bar and in State v. Wakefield, 73 Mo. 549, 552, and State v. Chauvin, 231 Mo. 31, 37, in which the instructions placed a greater burden on the State than the law required to sustain a conviction, and hence were not prejudicial.

Another class of cases in which the instructions may be broader than the indictment or information and yet not prove prejudicial, are those in which the added words may be rejected as surplusage because inapplicable under the charge, and, therefore, not tending to mislead the jury. To this class belong State v. Faulkner, 185 Mo. 673, 707, and State v. Scullin, 185 Mo. 709, 712.

IV. *Instruction: Self-Defense.* Preliminary to a consideration of instruction numbered 9 in regard to appellant's entering into the difficulty, and instruction numbered 10 in regard to self-defense, to the giving of which appellant complains, we are confronted with the inquiry as to whether an instruction on the theory of self-defense and its correlative instruction may properly be invoked by the defense in a case of this character. In the few cases in which the matter has been considered, the plea of self-defense has been held to be permissible in a prosecution for mayhem as in cases of homicide, but, in order to be available in justification of the act, the resistance must be proportionate to the injury offered. [Green v. State, 151 Ala. 14, 15 Am. & Eng. Ann. Cases 81; State v. Skidmore, 87 N. C.

509; Hayden v. State, 4 Blackf. (Ind.) 546; People v. Wright, 93 Cal. 564.]

This court has impliedly, at least, held in State v. Bidstrup, 237 Mo. 273, that upon evidence having been introduced in regard to self-defense by either the State or the accused, that instructions in regard thereto are proper in cases of maiming, upon the theory that self-defense is an affirmative defense and the court is required under the statute (Sec. 5231, R. S. 1909) to instruct the jury in writing upon all questions of law arising in the case necessary for the information of the jury in giving their verdict.

If, therefore, it appears that there was any evidence in this case, authorizing instructions in regard to self-defense, the same should have been given, and when given, if found to be prejudicial, they will justify a reversal; but if, on the contrary, the facts do not justify the giving of the instructions, although they may have been improperly framed, if the appellant did not suffer injury therefrom, he should not be heard to complain.

Instruction numbered 9 is to the effect that if the appellant sought or brought on the difficulty or voluntarily entered into same, he cannot justify himself under the law of self-defense. This instruction is erroneous in not stating the intention with which the appellant entered into the difficulty. [State v. Pennington, 146 Mo. 27; State v. Goddard, 146 Mo. 177.]

Instruction numbered 10, while inartificially drawn, correctly states the law in regard to self-defense, and is, therefore, not subject to valid criticism on this account. But the appellant should not be heard to complain on account of the giving of these instructions although improperly worded, because there was no sub·· stantial evidence to sustain the theory of self-defense.

A brief review of the testimony will demonstrate the correctness of this conclusion. Appellant was, according to his own statement, under the influence of

liquor when he went to the schoolhouse.   Upon his arrival there he assumed an offensive attitude towards the orderly proceeding of the entertainment, by going upon the stage and interrupting the exercises, and when admonished to desist, by a look from Yoeman, he left the stage shaking his fist at the latter.   Subsequently when Yoeman and others were attempting to quiet a disturbance in the school room, caused by some boys, appellant hearing the noise, started into the building with his knife open, and when Homer Martin, one of his witnesses, remonstrated with him, appellant replied, "I know you are my friend, but I am going in there; I am going in there to stop that thing."   Yoeman, continuing in his endeavors to preserve order, pushed the appellant off of the schoolhouse steps as he attempted to enter the room; the latter immediately again sought to enter, cursing Yoeman as he went up the steps, and upon reaching him cut him across the face, inflicting the wound charged in the information. Up to the point of the infliction of this injury there is no testimony for the State or the defense that Yoeman was attempting to do more, or, in fact, that he subsequently did more, than attempt to prevent appellant from entering the school room; this being true, there was no authority for the giving of an instruction on self-defense or of a statement of the law in regard to the accused entering into the difficulty, the latter being permissible only when there is testimony to authorize the giving of an instruction on self-defense.   Under this state of facts, it is difficult to see how the appellant could have been injured by the giving of the instructions complained of, conceding that they may have been defectively framed.   We hold, therefore, that there is no substantial merit in appellant's contention in regard to these instructions.

V.  *Instruction*: *Teacher May Preserve Order.* Appellant contends that error was committed in the giving of the following instruction:

"11. If you find from the evidence that the prosecuting witness, Yoeman, was a teacher in the district where the alleged crime was committed, and as such teacher had charge of the entertainment in said schoolhouse in said district, then, in that case, the teacher had a right to keep order at said meeting, and use what force that was necessary to preserve order and keep peace within said meeting place."

The meeting at the schoolhouse the night the offense was committed, as shown by the record, was held for the commendable purpose of affording entertainment for the people of the neighborhood and incidentally, no doubt, to increase their interest in the school. While not unmindful of the provisions of section 10784 as construed in Dorton v. Hearn, 67 Mo. 301, regulating the use of public school buildings, the meeting being in other respects authorized, we assume, nothing appearing to the contrary, that the statute referred to had been complied with. This being true, in the absence of any showing that a director was present, the teacher then employed in the district and who was conducting the entertainment, was clothed, from the very necessities of the case, with sufficient power to at least eject a ruffian who sought to enter the school room for the avowed purpose of disturbing the meeting. This was all that the instruction declared the teacher was empowered to do, and it was all, as the evidence clearly shows, that he did. The instruction, therefore, although awkwardly expressed, correctly declares the law applicable to this case, and we overrule appellant's contention.

From all of the foregoing, the judgment of the trial court should be affirmed, and it is so ordered.

*Brown, P. J.,* and *Faris, J.,* concur.