THE STATE v. THOMAS McGEE, Appellant.—106 S. W. (2d) 480.

Division Two, June 21, 1937.

*R. P. Smith* for appellant.

*Roy McKittrick,* Attorney General, and *Aubrey R. Hammett, Jr.,* Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant was convicted of perjury and sentenced to imprisonment in the penitentiary for a term of seven years. He appealed.

The information charged that appellant had given false testimony on behalf of his brother, Claude McGee, the defendant in the case of State v. McGee, 341 Mo. 148, 106 S. W. (2d) 478. Claude McGee in that case was charged with the murder of W. T. Carlton, in Scott County, Missouri. It was alleged in the information that appellant, Thomas McGee, had falsely testified at the murder trial that Claude McGee was with him in Cape Girardeau from one P. M. on May 8, 1935, the day the murder was committed, until five-thirty or six P. M., and from about five forty-five or six P. M. to nine P. M. of said day.

Appellant briefed a number of assignments of error. In his argument, however, it is correctly stated as follows:

"All of the errors assigned in this cause turn about the requirement of the law that in a perjury case a conviction must rest upon something more than the testimony of a single witness. This proposition of law and the complementary rule that the necessary corroboration must be upon a material fact or facts, form the basis of this appeal. The charge here involved is a double charge alleging first perjured testimony as to the whereabouts of Claude McGee on the afternoon of May 8, 1935, and second, perjured testimony as to the whereabouts of said Claude McGee on the night of May 8, 1935. It is possible for the court to say that there is sufficient testimony to support the jury's verdict upon the first of these charges, although the State's witnesses do not agree on whether or not the facts detailed by them occurred within the period covered by defendant's alleged false testimony. On the other hand no one other than the witness Ira Collins attempted to testify as to the whereabouts of Claude McGee after 6:00 P. M. on the night in question."

The instructions of the court, as given to the jury, authorized a conviction if the jury believed appellant's testimony, as to the whereabouts of Claude McGee on the night of May 8, 1935, was false. Note the following taken from the instruction:

"The Court further instructs the jury that to authorize a conviction of the defendant in this case, it is not necessary for you to believe and find from the evidence that the defendant, Thomas McGee, made all of the statements hereinabove set out when sworn as a witness before said Court, as herein set forth, and that he did so willfully, knowingly, corruptly and falsely, and that all of said statements

were false; but it is sufficient to authorize a conviction of the defendant if the jury believe and find from the evidence that the defendant, Thomas McGee, did make at least one of the statements hereinabove set out when sworn as a witness before said Court, as herein set forth and that he did so willfully, knowingly, corruptly and falsely, and that said statement was false; and you are further instructed that the falsity of such statement must be established to your satisfaction and beyond a reasonable doubt, either by the evidence of more than one credible witness, or by one such witness, strongly corroborated by other evidence of facts and circumstances which *convice* your minds of the truth of the testimony of such single witness, and you must further be satisfied that the testimony of such single witness thus establishes the falsity of such statement beyond a reasonable doubt.''

The correctness of this instruction was not questioned, but it is insisted here that the State offered only one witness for the purpose of proving that Claude McGee was not at the place where appellant testified he was, on the night of May 8, 1935, between the hours of about six to nine P. M.; also, that this one witness was not corroborated in his testimony as is required by law. No serious point is made that the State did not introduce sufficient evidence to justify a conviction of appellant as to the statements made with reference to the whereabouts of Claude McGee on the afternoon of that day. However, since the jury was authorized to convict appellant on the evidence as to the whereabouts of Claude McGee after six P. M. on said day, the record must contain corroborating evidence, as required by law, of the witness testifying for the State upon that point. The evidence disclosed that Carlton was shot and killed on May 8, 1935, at about nine P. M., when he and his family returned home. Claude McGee and others were charged with the murder. McGee was convicted. Appellant testified that his brother Claude was home in Cape Girardeau playing cards with him on that night from six to nine P. M.

Ira Collins, witness for the State, testified that he saw Claude McGee on the afternoon of that day, when Claude and John Manor arranged with him to take them on a trip that night. Note this witness's testimony:

''A. They came out to my house in the afternoon—they had paid me to make two trips before that, one to the CCC camp and the other one to some of his kinfolks near East Prairie, and they wanted me to take them down in the country about sixteen miles to collect some money, and that is how come me to go by; Manor lived about two miles from my house and he asked me would I come by his house and save him that walk.''

Ira Collins was corroborated as to this evidence by a witness named Jack Burroughs, who testified as follows:

"A. We stopped at the Robinson Lumber Company and McGee and Manor got out and talked to a fellow.

"Q. Do you know who they talked to? A. I didn't know his name at the time, but it was Ira Collins.

"Q. Where did you park your car with reference to the house where Ira Collins was? A. Just across the street, a little past the house, the car headed north.

"Q. Did Claude McGee and Manor have to cross the street to get to Collins' house? A. Yes, sir."

Jack Burroughs further testified that on the afternoon of May 8, he took John Manor, Claude McGee, Floyd Smith and Miles Sweet south on Highway 61, through Ancel and Fornfelt with the intention of going to Gray's Point; that they stopped at a place, which we learn from the evidence was near the home of Carlton, where the homicide was committed that evening. Burroughs testified that the parties in his car informed him that they wanted to go to the house, but that a car was there and it was no use; that they wanted to see a couple of women. Summing up his evidence he testified as follows:

"Q. When you got down there you asked them if that was the house? A. No, sir, they said 'There ain't no use to go on down there, I see a car there,' and I could see that house on the hill, and said, 'Is that the house'; they said, 'Yes'. I said, 'I don't see no car,' and they said, 'It's setting kind of at the back.' "

Thereafter the parties returned to Cape Girardeau and to the Collins home, near a lumber yard, where McGee and Manor talked to Collins as related above. Miles Sweet testified for the State. His testimony corroborated that of Burroughs.

Collins also testified that he met Claude McGee, Floyd Smith and John Manor at about seven-thirty P. M., as had been agreed, and took them south on Highway 61; that McGee and his companions had informed him that they wanted to collect some money; that they drove through Fornfelt to a place in the road near Gray's Point, where they parked the car on a side road and Claude McGee, Manor and Smith left the car; that some time later McGee and Manor returned with guns in their hands, but Smith was not with them at this time; that he, Collins, drove the car back to Cape Girardeau taking McGee and Manor, but not Smith. Collins testified that he questioned McGee and Manor as to what had happened and McGee answered that he shot once and his gun jammed. Collins' testimony was corroborated by a number of witnesses as to the minor details on this trip. For example, Collins testified that a truck was parked in the road a short distance from where he was parked while waiting for McGee and his companions to return; that a car passed along the road and stopped for a moment where the truck was parked, then drove on. The parties in the truck testified corroborating Collins as

to this occurrence and stated that the car that passed was the Carlton car. The wife of the deceased, Carlton, and his daughter gave similar testimony. Mrs. Carlton and her daughter further testified that when they arrived home they noticed a light in the kitchen; that the deceased went to the house and almost immediately thereafter they heard a number of shots; that when running to the house Mrs. Carlton met Floyd Smith. We learn from the evidence that Smith remained. there for some time. These witnesses also noticed another person running from the house, but it was dark and they could not describe him.

The sole question is, was the evidence of Collins, as to the whereabouts of Claude McGee on the night of the homicide, sufficiently corroborated to sustain this conviction? We are of the opinion that it was.. The general rule followed in most jurisdictions, and in this State, is well stated in 48 Corpus Juris, 905, section 173:

"The corroboration may be by circumstantial evidence. The corroborating circumstances need not be proved by direct testimony specifically corroborating the testimony of the main witness, but may consist of proof of independent facts which together tend to establish the main fact, that is, the falsity of the oath, and which together strongly corroborate the truth of the testimony of the single witness who has testified to such falsity."

See, also, State v. Hunter, 181 Mo. 316, l. c. 335, 80 S. W. 955, l. c. 959, where this court quoted the following with approval:

" 'The true principle of the law is this: The evidence must be something more than sufficient to counterbalance the oath of the prisoner and the legal presumption of his innocence. The oath of the opposing witness, therefore, will not avail, unless it be corroborated by other independent circumstances. But it is not precisely accurate to say that these additional circumstances must be tantamount to another witness. The same effect being given to the oath of the prisoner as though it were the oath of a credible witness, the scale of evidence is exactly balanced, and the equilibrium must be destroyed by material and independent circumstances before the party can be convicted. The additional evidence need not be such as, standing by itself, would justify a conviction in a case where the testimony of a single witness would suffice for that purpose; but it must be at least strongly corroborative of the testimony of the accusing witness.' "

A number of the more important circumstances corroborative of the evidence of witness Collins are: That Claude McGee, Manor and Smith went to the scene of the crime, on the afternoon of the homicide, and apparently did nothing except look over the situation and make remarks about the Carlton home; that after returning from this trip it was Claude McGee and Manor who wanted to see Collins, and Burroughs took them to his, Collins' home, where they were seen talking to Collins. This certainly corroborated Collins' testimony

with reference to the arrangements made for the evening trip. One of their number, Floyd Smith, was seen in the Carlton home at the time of the homicide. These are circumstances strongly corroborating the testimony of Collins, that Claude McGee was not at home between the hours of seven-thirty and nine P. M., but was at the scene of the crime. We are of the opinion that the evidence was sufficient to sustain the conviction.

We have examined the record proper and find no error therein. The judgment is affirmed. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.