STATE of Missouri, Respondent,

v.

Vito CUSUMANO, Appellant.

No. 49876.

Supreme Court of Missouri,

Division No. 1.

Nov. 11, 1963.

Opinion Modified on Court's own Motion and Motion for Rehearing or for Transfer to Court En Banc Denied Dec. 9, 1963.

display and exhibit a .32 caliber automatic pistol in the presence of Joseph Costello in the Tic Toc Club located at 421 DeBaliviere, St. Louis, Missouri, on February 10, 1962, shortly prior to 4:00 P.M. and that he, Vito Cusumano, at this same aforementioned time and place heard one shot fired, then saw Joseph Costello on the floor with Edward Brown, the deceased, lying on top of Joseph Costello, when he then heard more shots, whereas, in truth and in fact, Edward Brown, the deceased, did not have any kind of a weapon in his hands and there were no shots fired while Edward Brown, the deceased, was lying on the floor on top of Joseph Costello; but on the contrary, Vito Cusumano did not see Edward Brown, the deceased, display and exhibit a .32 caliber automatic pistol in the presence of Joseph Costello in the Tic Toc Club located at 421 DeBaliviere, St. Louis, Missouri, on February 10, 1962, shortly prior to 4:00 P.M., and Vito Cusumano did not hear any shots fired when he saw Joseph Costello lying on the floor with Edward Brown, the deceased, lying on top of Joseph Costello."

Defendant's alleged perjured testimony was given before a grand jury investigating the killing of Edward Brown by Joseph Costello at the Tic Toc Club operated by Brown. Costello was indicted for second degree murder but died before being brought to trial. The killing resulted from an altercation between Brown and Costello over an arrangement they were making for Costello's taxicabs to bring persons to Brown's establishment for which Brown was to pay Costello one thousand dollars. Brown had paid three hundred and was to pay the rest by Friday, February 9, 1962. It had not been paid and Costello drove to Brown's Club on Saturday afternoon, February 10th, to see about it. Costello took with him his niece Valerie Pilcher, Mel Soles (who worked for Costello) and Mrs. Thyra McGinty, an employee of Brown, who was to get her pay for the week at that time. Before going to the Club, Soles and Mrs. McGinty had gone to the airport,

O'Hanlon & Daly, Robert J. O'Hanlon, Richard L. Daly, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, William L. Hungate, Sp. Asst. Atty. Gen., Troy, for respondent.

HYDE, Judge.

Defendant was convicted of perjury and sentenced to two years' imprisonment. Secs. 557.010, 557.020 (statutory references are to RSMo and V.A.M.S.) Defendant has appealed and contends the court erred in refusing to sustain his motion for a directed verdict at the close of the entire case.

The indictment charged defendant with falsely swearing: "That he, Vito Cusumano, saw Edward Brown, the deceased,

where Costello met Valerie, after which they went to a restaurant and then to the office of Costello's taxicab company. While there Costello called defendant to find out whether Brown had given defendant the money due Costello and then took an automatic pistol out of a desk drawer and put it in his pocket. (It was identified as the .32 caliber pistol used to shoot Brown.) When they reached the Club, Brown was there alone but defendant came in soon, having followed them in his car. Mrs. McGinty and Valerie went to the dressing room to look at costumes. Soon afterward Mrs. McGinty heard "something, sounded like a chair hit the floor" and Soles came running back and said: "You girls have to get out of here, there is going to be trouble." She heard Costello say: "If we can't settle it one way, there is always another way to settle it." As Mrs. McGinty ran in front of the bar, she saw Brown on top of Costello backed up against an overturned table leaning against the wall. Costello yelled for somebody to get him off of him and defendant pulled Brown off.

Mrs. McGinty further testified: "He pulled him back toward the cigarette machine and Joe Costello picked the gun up off the floor and he shot him. * * * Q And you saw Cusumano pull Brown back there; is that right? A Yes, sir. Q And did you say that Costello picked up a gun and did something? A He shot him. Q Where was the gun at the time you saw it? A It was lying on the floor. * * * Q You say Costello picked up the gun and—A He did it like I would bend over and pick up something, he sort of stumbled and picked it up and—Q Did he fire the gun? A Yes, sir. Q And where was Brown at the time he fired the gun? A He was standing back there (indicating) and Vito was pulling him back—not because he did the shooting, but because he was trying to get him away from Joe Costello. Q Did Costello advance toward Brown at the time he was shooting? A Yes, sir. Q And what happened then? A Well—and as he went in to him he was fighting like this and Vito sort of, oh, let him go * * *."

On cross-examination, Mrs. McGinty testified that she heard no shots before she saw the men in the corner by the table, or on the table. She said defendant pulled Brown "all the way to the cigarette machine"; that she saw Costello "stumble out, like, and pick up that gun"; that at the time, Brown was "away back here (indicating)"; and that after getting the pistol Costello shot four times. She further testified: "Q (By Mr. Daly) Now, when Mr. Soles came back here (indicating) and said: 'There is a commotion, there is trouble, you better get out of here,' you could not see any one at that time; is that correct? A No, sir. Q Just the girl and Mr. Soles; is that right? A Yes, sir. Q I will ask you at this time: can you tell us, when Mr. Soles came back and made this statement to you, did Ed Brown have a gun in his hand at that time? A I can't say. I couldn't see him. How could I see? Q You can't say? A I can't say if I couldn't see him."

A model representation of the Tic Toc Club room was used in connection with the testimony at the trial with the witnesses indicating positions on this model. Neither Soles nor Miss Pilcher testified at the trial. It was stated by defendant's counsel at the oral argument herein that they refused to testify. Defendant's testimony at the trial, as to the shooting, was substantially the same as that given before the grand jury.

Defendant relies on the rule that perjury must be proved by the testimony of two witnesses or one witness and strong corroborating circumstances, citing State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314, 325. (See also statement of the rule in State v. McGee, 341 Mo. 151, 106 S.W.2d 480, 482, 111 A.L.R. 821.) There were two charges of perjury in the indictment and as defendant says the state had to prove one of the following: "(1) that Vito Cusumano did not see Edward Brown, the deceased, display and exhibit a .32 caliber automatic pistol in the presence of Joseph Costello,

etc.; (2) that Vito Cusumano did not hear any shots fired when he saw Joseph Costello lying on the floor with Edward Brown, the deceased, lying on top of Costello."

It is true, as defendant contends, that the state had no witness who saw the parties at the beginning of the altercation and could say that Brown did not have a pistol in his hand prior to the time when Mrs. McGinty saw them struggling on the floor (or against an overturned table) with Brown on top of Costello. It was also shown by several state's witnesses that Costello had been shot in the left forearm, the bullet going through and out without striking a bone. There is no explanation in the evidence as to how or when Costello was shot. Four .32 caliber shell casings were found in the room by the police who were soon there making a thorough investigation; also a clip with one live shell in it was found there. Four bullets were accounted for, three taken from Brown's body and one that went through the north wall 18 inches above the floor and was found in an adjoining building. Two automatic pistols owned by Brown were found in the Club by the police, one of larger and one of smaller caliber than Costello's pistol. The .32 caliber shells could not be used in them and both were fully loaded. One was found in a locked cabinet and the other on a shelf behind the bar covered with cobwebs and dirt. Thus, while the state had no direct testimony of anyone, who saw the beginning of the altercation, that Brown did not have a pistol in his hand before Mrs. McGinty saw them struggling in the corner, there was strong circumstantial evidence to show he did not. No pistol that had been fired was found, and no shell casings from any pistol, except Costello's pistol, were found. However, Costello was shot through the left forearm and certainly the evidence does not indicate he shot himself; but of course he could have been shot in a struggle over the pistol before Mrs. McGinty came into the room. Nevertheless, according to the state's evidence the pistol was on the floor, out of the possession of either of the men, when

Mrs. McGinty first saw it at the Club. She said Costello picked his pistol off the floor when defendant pulled Brown off so it is evident that Costello did not have control of it all the time. Even if no other pistol was involved, it is left uncertain as to whether or not Brown might have had possession of this one at some time. Therefore, we must hold that the state did not make a sufficient showing by direct contradictory testimony of any witness for submission of the issue of perjury of defendant in stating that he saw Brown have a pistol in his hand before Mrs. McGinty came into the room.

However, as to whether the shots that killed Brown were fired while Costello and Brown were on the floor with Brown on top of Costello, as defendant testified before the grand jury, or whether they were fired after defendant had pulled Brown off of Costello and Costello had picked his pistol off the floor as Mrs. McGinty testified, there is a clear and complete conflict between the testimony of defendant and Mrs. McGinty. Of course, this was very material on the issue of whether Costello was guilty of a crime, either second degree murder or manslaughter. There were also strong corroborating circumstances for Mrs. McGinty's version by the fact that Costello armed himself before going to the Club with the pistol she said he used (police investigation identified the ammunition used as his), as well as what he said about "another way to settle it," the results of the police investigation of the premises as to weapons and ammunition found, and the nature of the wounds Brown sustained, one in the right chest "two inches medially toward the center of the nipple line," one in the left chest "at the level of the ninth rib," and one in the left buttock, the latter wound especially not likely to have been inflicted while Brown was on top of Costello (face to face) on the floor. Defendant argues this latter wound supports defendant's testimony that all shots were fired while the men were struggling on the floor (and also says the fact the

bullet hole in the wall was only 18 inches above the floor supports that version) but we conclude that the jury more reasonably could take the other view if Mrs. McGinty's testimony was believed. Our conclusion is that the state's evidence was sufficient to submit perjury in this testimony of defendant and the court properly overruled defendant's motion for a directed verdict.

Defendant alleges error in giving Instruction No. 2 because the state's evidence would not sustain a conviction of perjury by defendant in testifying he saw a pistol in Brown's hand. Instruction No. 2 authorized a finding of guilty if the jury found defendant falsely testified "that he, Vito Cusumano, saw Edward Brown, the deceased, display and exhibit an automatic pistol in the presence of Joseph Costello in the Tic Toc Club located at 421 DeBaliviere, St. Louis, Missouri, on February 10, 1962, shortly prior to 4:00 p. m., and that he, Vito Cusumano, at this same aforementioned time and place heard one shot fired, then saw Joseph Costello on the floor with Edward Brown, the deceased, lying on top of Joseph Costello, when he then heard more shots; (whereas, in truth and in fact, Edward Brown, the deceased, did not have any kind of a weapon in his hands and there were no shots fired while Edward Brown, the deceased, was lying on the floor on top of Joseph Costello) ; but on the contrary, Vito Cusumano did not see Edward Brown, the deceased, display and exhibit an automatic pistol in the presence of Joseph Costello in the Tic Toc Club located at 421 DeBaliviere, St. Louis, Missouri, on February 10, 1962, shortly prior to 4:00 p. m., and Vito Cusumano did not hear any shots fired when he saw Joseph Costello lying on the floor with Edward Brown, the deceased, lying on top of Joseph Costello."

Defendant cites State v. Blize, 111 Mo. 464, 473, 20 S.W. 210, in which two assignments of perjury were contained in the indictment, one of which "general reputation * * * for virtue and chastity" of a complaining witness, was submitted in a way which the court said "[was] well calculated to mislead the jury as to what evidence would be required to convict defendant of swearing falsely to the reputation of complaining witness." The other perjury charge was that the defendant falsely swore that he himself had had sexual intercourse with the prosecutrix. While one of the instructions submitted both of these charges, the other submitted only the one as to general reputation and the court said it improperly referred to a specific act as evidence from which general reputation could be shown. The court's conclusion was: "As the case was submitted, we are unable to say upon which charge the verdict was rendered" and the judgment was reversed and the cause remanded. Defendant also cites 70 C.J.S. Perjury, § 73, p. 545, stating: "Where there are several assignments of perjury, the jury should ordinarily be informed as to which assignment or assignments of false testimony are submitted to them as a basis for their verdict."

However, Instruction 2 submitted all matters conjunctively and, while the state lacked direct testimony of a witness that Brown did not have a pistol in his hand before he was seen on top of Costello on the floor, nevertheless as we have noted there was strong circumstantial evidence that he did not. The thorough police investigation showed only Costello's pistol involved. The facts shown by this investigation, the nature of Brown's wounds and Mrs. McGinty's testimony as to what occurred in strong circumstantial evidence that Brown did not have a pistol in hand. Some courts have held that perjury can be found from circumstantial evidence only. 41 Am.Jur. 35, Perjury, Sec. 65; Annotations, 15 A.L.R. 639, 27 A.L.R. 857, 42 A.L.R. 1063; 70 C.J.S. Perjury § 60, p. 532. While we adhere to our rule of direct contradictory testimony of one witness and strong corroborating circumstances for conviction in this kind of a perjury case (which Instruction 3 herein stated to the jury), we have also held the effect of such a conjunctive submission is "to impose upon the state a greater burden than that which

the law imposed upon it," and, therefore, not prejudicial to the defendant. In State v. Anglin, Mo.Sup., 222 S.W. 776, the criticised instruction required a finding that the defendant "did wrongfully take and carry away $100 lawful money of the United States *and* one diamond ring." In that case, the evidence did not prove both charges of stealing but the court held the conjunctive submission not prejudicial saying: "Learned counsel for appellant, however, seems to mistake the effect of this instruction; for he says that it 'authorizes the jury to convict defendant of the offense of grand larceny if they find that he stole, took and carried away *either* the currency *or* the diamond ring.' A reading of the instruction discloses the error of this statement. The jury was required by the instruction to find the defendant guilty only in the event that it found that he stole both the currency and the ring." See also 1 Raymond Missouri Instructions 62, and cases cited, Sec. 69; State v. Wakefield, 73 Mo. 549; State v. Bunyard, 253 Mo. 347, 161 S.W. 756; State v. Baird, 271 Mo. 9, 195 S.W. 1010; State v. Daegele, Mo. Sup., 302 S.W.2d 20, 26; State v. Brim, Mo.Sup., 339 S.W.2d 775, 779. The rule of harmless error from conjunctive submission "does not apply where one of the several grounds of negligence conjunctively submitted is an improper statement of the law and a positive misdirection." Miles v. Gaddy, Mo.Sup., 357 S.W.2d 897, 901; see also Donaldson v. Manzella, Mo.Sup., 338 S.W.2d 78, 83. However, as we have stated, in this case the state did have strong circumstantial evidence on this issue, there was no improper statement of the law and the state had ample proof to sustain a conviction on the other charge of perjury submitted. Therefore, we hold this instruction only imposed on the state a greater burden than was properly required of it and the instruction was not prejudicially erroneous.

■ Defendant also claims error in allowing Mrs. McGinty to testify to activities of and conversations with Costello, Soles and Miss Pilcher; allowing testimony of police officers concerning search of Costello's home, finding .32 cartridges there and stating the tests made of them; and allowing testimony of police officers and a doctor concerning the arrest of Costello at Barnes Hospital and his condition at that time. Defendant concedes "some evidence of the nature of the events leading to the shooting was necessary to make the subject matter of the appellant's alleged perjury intelligible to the jury" but says "what happened after the shooting was not background material, or no longer an explanatory preamble to the evidence of the shooting on which the charge of perjury was brought"; and that by allowing it "the issue of the murder was accentuated, the defendant's counsel was drawn into cross-examining each witness at great lengths on irrelevant issues." There were few objections to the testimony concerning what was said and done before the shooting and we find no prejudicial error in the rulings on them. The testimony of the police officers concerning the cartridges they found and tests on them was properly admitted because this evidence tended to show that Brown did not have or use a pistol there and that the only pistol involved was the one owned by Costello. Thus this was competent and material evidence on the issue of perjury of defendant.

■ Defendant states the objectionable testimony as to what occurred after the shooting, as follows: Mrs. McGinty "was allowed to testify that after the shooting and outside the presence of appellant, she got into the car with Costello, Soles and Pilcher; that Costello wanted to throw the gun in the river, that Valerie Pilcher put the gun in her purse, and that Costello went to the doctor's office. She then testified about her movements back at the Tic Toc, back at the hotel, her conversation with appellant at his apartment and finally her arrest." Objections as to what Costello said he wanted to do with the gun were sustained and no other action was requested. Defendant's objections to Mrs. McGinty's testimony, as to what she did after leaving

the hospital, were to giving reasons for what she did and as to conversations with others not involved and these were sustained. Two objections were made to questions as leading and one sustained. Certainly Mrs. McGinty's testimony about defendant advising her to go back to Chicago and offering to assist her to go to the airport to do so was properly received. State v. Faulkner, 175 Mo. 546, 75 S.W. 116, 130, cited by defendant is not in point on this situation. As to the testimony of the police officers and the doctor concerning the gunshot wound in Costello's left forearm, this was not prejudicial to defendant because it was a circumstance tending to prove he told the truth about Brown having a pistol that evening. Our conclusion is that there were no prejudicially erroneous rulings on admission of the testimony of which defendant complains.

Defendant further claims error in overruling his objection and request for a mistrial made because of a statement of the prosecutor in his closing argument. The state says this was retaliatory and invited by statements of defendant's counsel and it appears that the trial court could properly have so considered it. Defendant's counsel commented several times on the failure of the state to produce Mel Soles and Valerie Pilcher to testify, concluding as follows:

"We don't know what Valerie Pilcher saw. Four people were in there. The burden is on the State to prove his guilt, and wouldn't it be nice to know what Valerie would say? If she were here, what would she say? What did Jamie Glanton (Mrs. McGinty) tell Lieutenant Frank O'Neill? He is right across the street. When he took her down there, what did she say? Wouldn't it be nice to know? Wouldn't it be helpful to you to decide this case, if you could say, 'Here's what she told O'Neill'? The burden is not on me; I don't have an investigative force to send people to Connecticut and everywhere. That burden is on the State. If he is cheated, and he is cheated when they don't bring those witnesses in, you are cheated, because under

your oath, you have the responsibility of deciding this thing today." (Parenthetical insert ours.)

Thereafter the prosecutor said:

"Mr. Daly asks where are Valerie Pilcher and Melvin Soles. Well, I wish that they were here, too. I wish that they could tell you what went on in here. I can't tell you what I know about it, because under the Rules of Evidence that's not admissible."

■■ On what theory defendant thought it would be admissible for the state to show what Mrs. McGinty told a police officer about the occurrence is not explained and this would be some basis for a reference to the rules of evidence. In any event, the trial court has considerable discretion in acting on retaliatory statements and the appellate court must rely to some extent upon this discretion. State v. Fuller, Mo. Sup., 302 S.W.2d 906; see also State v. James, Mo.Sup., 347 S.W.2d 211; State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, certiorari denied 352 U.S. 936, 77 S.Ct. 237, 1 L.Ed.2d 167; State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, and other cases under ⊕⊃726, Criminal Law, West's Missouri Digest. Although we do not approve the statement made, our conclusion is that abuse of the trial court's discretion is not shown and this assignment of error is overruled.

Defendant's other assignments of error are that the court refused to permit him to have the entire transcript of his testimony before the grand jury prior to the trial and that when the entire transcript was tendered to him by the state immediately before the trial he should have been given additional time to study it. A week before the trial began, defendant requested "an order allowing to inspect and copy the transcript of his testimony." The court ordered the defendant be furnished all questions and answers on the following issues:

"(1) Whether defendant saw Edward Brown display and exhibit a pistol in the presence of Joe Costello in the Tic Toc Club located at 421 DeBaliviere, St. Louis,

Missouri on February 10, 1962 shortly prior to 4 P.M., and (2) Whether defendant heard one shot fired, and whether defendant saw Joe Costello on the floor with Edward Brown lying on top of Joe Costello, and whether the defendant then heard more shots."

■■■ A transcript of this testimony (three and a half pages) was given to defendant. On the morning of the day the trial began, prior to the voir dire examination, the entire transcript of defendant's testimony (54 pages) was tendered to defendant in the court's chambers. Defendant's counsel orally requested a reasonable amount of time prior to the trial to examine the transcript and the state said there was no objection to that provided the case was "not continued beyond today." The court stated it would not continue the case but would bear the matter in mind "in connection with the progression of the case" but did not think "it should interfere with the selection and impanelling of the jury." No actual application for a continuance was made and the only objections made concerned failure to order the entire transcript produced originally and "because that part which was produced was not extracted by the Court, but was extracted ex parte by the Circuit Attorney's Office." However, the part first furnished contained all of defendant's testimony before the grand jury that the state offered in evidence at the trial. Defendant made no request for additional time when the court convened that afternoon to hear the first witness or thereafter. We have said the trial court has discretion to permit inspection of testimony before a grand jury. State v. Pierson, 343 Mo. 841, 123 S.W.2d 149, 153; State v. Brinkley, 354 Mo. 337, 189 S.W. 2d 314, 335; State ex rel. Clagett v. James, Mo.Sup., 327 S.W.2d 278, 291. After the latter case, we adopted Criminal Rule 24.24, V.A.M.R. authorizing the court to permit inspection of such testimony "upon a finding of necessity to meet the ends of justice, preliminary to or in connection with a judicial proceeding, either civil or criminal." This was intended to and does give the court wide discretion within the limitations stated in the Rule. Since defendant was timely given all his grand jury testimony used by the state at the trial and there is no showing of materiality or importance to his defense of the rest of his testimony given to him before the trial began, we find no abuse of discretion in the court's action in limiting the grand jury testimony ordered to be furnished defendant or in its action concerning allowance of time after the entire transcript was delivered.

We have examined the record as required by our Rules 28.02 and 28.08 and find it sufficient with respect to those matters therein specified.

The judgment is affirmed.

All concur.