THE STATE, Respondent, v. FITZSIMMONS, Appellant.

1. It is discretionary with the court, in the trial of a criminal case, whether the witnesses in attendance shall be separated and ordered to retire so that they may not hear each other's testimony. If such an order be made and be disobeyed, it is, it seems, a matter of discretion with the court whether the disobedient witness shall be examined or not; it is not error to permit him to be examined.

State v. Fitzsimmons.

2. In the trial of a criminal case, the legal existence of a banking corporation may be proved by general reputation. (R. C. 1855, p. 1193, § 23.) This rule is applicable to the case of a corporation organized under the general banking law of another state.

3. Where a statute, on which an indictment is founded, describes or enumerates the offences disjunctively, the indictment, if it contain only one count, should charge them conjunctively if they are not repugnant; as, where the statute makes it an offence to "sell, exchange, *or* deliver," &c., for any consideration, any falsely made note, &c., it is proper that the indictment should charge the offences conjunctively, that the accused did sell, exchange *and* deliver, &c. If the offences are not repugnant, the indictment will not be liable to the objection that several offences are joined in the same count.

4. It is no defence to an indictment, founded on the ninth section of the fourth article of the act concerning crimes and punishments, (R. C. 1855, p. 591, § 9,) for selling, exchanging and delivering to another certain falsely made, forged and counterfeit bank notes of a certain denomination, that the bank named never issued genuine bills of the character or denomination of those described in the indictment.

5. To constitute a sale or exchange within the meaning of the said section, it is not necessary that the accused should have parted with his entire interest in the counterfeit paper for a consideration paid; the transaction would, it seems, be within the statute though the sale should be on credit, or, if there were a delivery, if it were understood that they should be returned in case they were not sold.

*Appeal from St. Louis Criminal Court.*

The facts sufficiently appear in the opinion of the court.

*Shreve & Boyce*, for appellant.

I. The court improperly summoned a juror. (Sess. Acts, 1857, p. 661.) The witnesses ordered to be separated disobeyed the order; yet the court permitted them to testify. The court improperly permitted the organization of the company to be proven by reputation. It is not sufficient that the bank was organized under a general banking law. (1 Denio, 9; 23 Wend. 103.) The jury found a verdict in the teeth of the instruction given at the instance of the defendant, that "to constitute a sale or exchange of the bills described, the defendant must have parted with his entire interest in the subject of sale for a consideration." The evidence showed conclusively that the bills described were delivered under an agreement that if the same were passed or utter-

red, in that case defendant should have one-half the proceeds, and, if not sold, nothing. Such a contract is void in law ; and there was no consideration given. The instruction given, telling the jury that though the Chippewa bank never issued *genuine* bills of the character or denomination, &c., yet, if the bills were falsely made bills, the defendant was liable, was erroneous. There can be no forgery, or counterfeit bill, without a genuine. To be falsely altered presupposes the existence of a genuine original. (9 Mo. 845.) The court erred in refusing the instructions asked. The indictment is defective, repugnant and contradictory. Selling and exchanging or delivering are distinct *offences*. If the defendant did one, he could not do the other.

*Mauro*, (circuit attorney,) for the State.

I. The incorporation of the bank was properly proved by reputation. (R. C. 1855, p. 1193, § 23.) There was a sufficient consideration proved for the sale of the spurious notes.

Scott, Judge, delivered the opinion of the court.

The defendant was indicted for selling, exchanging and delivering forged counterfeit notes to one George Hawdon for a certain consideration to him paid, which said notes purported to be made and issued by the Chippewa bank, a bank duly incorporated under the laws of the state of Wisconsin. The defendant was convicted and sentenced to the penitentiary, from which he appealed to this court.

One of the points made by the defendant is, that the judge of the court below summoned one of the jurors. It appears that the juror was upon the panel of jurors detailed for service in the cause. As the juror was regularly on the panel, we do not see how the defendant was affected in a way which injured him by the court's calling up the juror to be sworn. It does not appear that any irregularity was produced by this act of the judge.

The court ordered the witnesses to be separated during the examination. This order, however, was not obeyed, and

State v. Fitzsimmons.

some of the witnesses heard others testify during the trial. The defendant objected to those witnesses being examined, who, in violation of the order of the court, remained in hearing whilst other witnesses were testifying. The objection was overruled, and the witnesses were sworn and deposed on the trial. It is a matter in the discretion of the court whether the witnesses shall be separated or not during their examination. Though a matter in the discretion of the court, such a request from either party is usually allowed. If an order is made that the witnesses be separated and it is disobeyed, it is a matter of discretion with the court whether the disobedient witness shall be examined or not. Some maintain that the court can not deprive a party of the evidence of such a witness, his conduct only affording a matter for comment before the jury. (Parker v. McWilliam, 6 Bing. 683; State v. Sparrow, 3 Murph. 487; The State v. Brookshire, 2 Ala. 303; Greenl. Ev. § 432.) It is apparent that the witnesses were not in such a situation from hearing the testimony that the exercise of a sound discretion required their exclusion. The matter about which they testified in common was the spuriousness of the notes, a point on which the cause did not turn, and a matter capable of being placed beyond all doubt or cavil by testimony, had it been deemed important.

The bank whose notes were forged was not incorporated by a special act creating a corporation, but it seems that it was created under a general banking law providing the mode by which banking companies might be organized for doing business. The twenty-third section of the sixth article of the act concerning practice in criminal cases enacts, that if, on the trial or other proceeding in a criminal cause, the existence, constitution or powers of any banking company or corporation shall become material or in any way drawn in question, it shall not be necessary to produce a certified copy of the charter or act of incorporation, but the same may be proved by general reputation, or by the printed statute book of the state, government or country by which such corpora-

tion was created. The indictment charges that the forged notes purported to be made and issued by the Chippewa bank, a bank duly incorporated under the laws of the state of Wisconsin. The act creating the corporation or providing for its organization was not produced, nor a copy of it, but the existence of the bank was suffered to be proved by reputation against the exceptions of the defendant. The statute uses the words "banking company" and "corporation" as synonymous. There can be no difference between a banking company organized under a general law and one created by a special act of legislation, so far as the question involved is concerned. If a special act may be proved by reputation, it would seem that a general act would with more propriety be proved in such a manner. If, under a general law, acts are required to be done by individuals before the business of banking can lawfully be commenced, so under all special acts of incorporations things are to be done preparatory to its becoming a lawfully organized body for the transaction of the business for which it was created. There is no more impropriety in suffering the performance of all things necessary to the formation of a banking company to be shown by the existence of the bank, which is proved by reputation, in the one case than in the other. Laws, systems, and modes of doing business, are changing so rapidly, that, unless we disregard words and forms, and adhere to sense and substance, it will be impossible to administer the law. If a bank created by a special act of legislation may have its existence proved by reputation, there is no reason why a bank organized under a general law may not have its existence established in the same way. The general law is as much a charter *pro hac vice* as a special act of incorporation.

We do not see what the cases from New York have to do with this question. There the constitution requires that acts of incorporation shall be passed by a majority of two-thirds of the legislature. The general banking law of that state was held by one court to be within this provision and

consequently should have been passed by a majority of two-thirds and authenticated accordingly. By another court it was held that the law was not within that constitutional provision, and did not require the assent of two-thirds of the members elected to each branch of the legislature. (Warner v. Beers, 23 Wen. 103 ; De Bow v. The People, 1 Denio, 9.) We can not see that the question, what is a body politic or corporate within the meaning of a clause in the constitution of the state of New York ? has any bearing upon the question how a banking company must be organized so that its existence may be proved by reputation under the twenty-third section of the sixth article of the act concerning practice in criminal cases.

It is objected that there are several offences joined in one count in the indictment ; that the defendant is charged with having made a sale of the notes, which is one offence, and is also charged with having exchanged or delivered the notes, which is another offence. The indictment is founded on the ninth section of the fourth article of the act concerning crimes and their punishments, and charges that the defendant feloniously did sell, exchange, and deliver to one George Hawdon, for a certain consideration to him paid by the said George Hawdon, to-wit, for the sum of six dollars, &c. The section of the act referred to provides that " every person, who shall sell, exchange or deliver, or offer to sell, exchange or deliver, or receive upon a sale, exchange or delivery, for any consideration, any falsely made, altered, forged or counterfeited note, check, bill, draft, or other instrument," &c. An offence in an indictment must not be stated in the disjunctive, so as to leave it uncertain what is really intended to be relied on as the accusation. Thus to say that the defendant forged or caused to be forged, that he erected or caused to be erected a nuisance, is not sufficiently positive. (1 Chit. Cr. L. 231.) Where a statute, on which an indictment is founded, enumerates the offences or the intent necessary to constitute such offences disjunctively, the indictment must charge them conjunctively where the acts are not re-

pugnant; as where an act against unlawful shooting affixed a penalty when the act was done with an intent to maim, disfigure, disable or kill, (in the disjunctive,) the indictment must charge the intent conjunctively. So in England, under statutes describing the offences disjunctively, it was held fatal to say the defendant forged *or* caused to be forged an instrument. (Whar. Cr. L. 172.) So where a statute used the words " cut *or* deface," an indictment charging the offence in the conjunctive " cut and deface" was held proper. (Crown C. C. 82.) In the case of the Commonwealth v. Twitchell, 4 Cush. 74, it was held that in an indictment on the statute, by which the setting up *or* promoting of any of the exhibitions therein mentioned without license therefor is prohibited, it was not duplicity to allege that the defendant did set up *and* promote such an exhibition. No doubt it would be better, in all cases where the offence or the intent is described by words in the disjunctive, to have a count on each word and intent; but the contrary course has been too long sanctioned now to be abandoned but by force of legislation.

The defendant excepted to the instruction to the effect, that, though the Chippewa bank never issued genuine bills of the character or denomination of those described in the indictment, yet, if the bills were falsely made bills, they are within the statute. The words *falsely made* are used in the section on which this indictment is framed. Forgery at common law denotes a false making, which includes every alteration of or addition to a true instrument. (2 East, 852.) It can not be maintained that there can not be a forgery unless there is a previously existing genuine instrument identical with that forged.

We are not prepared to say that the instruction given for the defendant, to the effect that " to constitute a sale or exchange of the bills described, he must have parted with his entire interest in the subject of each, for a consideration paid," is correct. If there was a sale of the bills followed by a delivery, we can not see how the matter can be bettered

for the prisoner because the consideration was not paid down. The injury to the community is as great in the one case as the other, and both contracts are equally within the words of the law. There may be a valid sale on credit; and it is out of the question that the prisoner should be heard to allege that, though he made a sale, yet, as the consideration of the sale and delivery was an act to be done in future, and as the performance of that act could not be compelled by law, therefore there was no sale. If the consideration of the sale of the notes was a part of the money to be earned by their resale, if the sale was accompanied with a delivery of the notes, the transaction was within the statute, though the notes were to be returned in the event of their not being sold. The whole transaction, in all its parts, was criminal and void; and because the law, in describing it, uses language that is properly appropriated to valid transactions, it would be singular if those guilty of the offences described should be allowed to go free on the ground that their acts were void and amounted to nothing in law.

Judgment affirmed. Judge Ewing concurs. Judge Napton absent.