THE STATE v. WHITWORTH, *Appellant.*

### Division Two, February 12, 1895.

1. **Criminal Practice**: SEPARATION OF WITNESSES: SEDUCTION. The court, in ordering the separation of witnesses in a seduction case, may, in its discretion, except the father of the prosecutrix.

2. ———: ———: ———: WAIVER. Where the defendant withdraws his request for such separation of the witnesses because of the exception of the father of the prosecutrix, he waives objection to such exception.

3. ———: EVIDENCE: SEDUCTION: HARMLESS ERROR. The improper admission of the testimony of the mother of the prosecutrix that the daughter told her that the former and defendant were engaged is harmless, where the defendant in his testimony and by his letters in evidence admits the engagement.

4. ———: ———: ———: ———. A conviction of seducing a female "of good repute" will not be reversed because one of several witnesses called by the state to prove her reputation was asked if he knew her reputation for virtue, "truth" and chasity and, answered that he did and that it was good.

5. ———: ———: ———. Evidence that after the preliminary trial defendant went to the home of the prosecutrix and told her parents he had come to marry her and that he would have married her according to promise but for outside influence, and that he had concluded they would get married and "drop the thing where it was" was admissible as corroborative of the testimony of the prosecutrix as to the prior promise of marriage and as tending to prove the sexual intercourse.

6. ———: TRIAL: SEDUCTION. It was not error to permit the prosecutrix and her mother to sit within the bar of the court during the argument to the jury.

7. ———: ———: ———: REMARKS OF JUDGE. A remark by the trial judge that he would not permit the witness to be attacked and intimidated, called forth by language of the defendant's counsel, is not reversible error, where the fullest cross-examination was permitted.

8. ———: ———: ———: ———. A remark of the court, in response to suggestion of defendant's counsel, that "I believe you attorneys desire to mislead me," *held*, under the circumstances, not a proper assignment of error.

9. ——: ——: ——: ARGUMENT OF COUNSEL. Statements of the attorneys for the state in their argument to the jury that defendant had admitted the offense and had not denied debauching the prosecutrix, *held* sustained by the evidence, and, therefore, not error.

*Appeal from Pettis Criminal Court.*—HON. JOHN E. RYLAND, Judge.

AFFIRMED.

*W. D. Steele* and *Sangree & Lamm* for appellant.

The trial court committed reversible error in not instructing upon the whole law of the case. *First.* In not defining and explaining the word "seduce." *State v. Reeves,* 97 Mo. 668. *Second.* In not defining what "corroboration" means, and in not designating the circumstances which would supply the necessary and statutory support to the story of the prosecutrix on the alleged promise to marry, alleged to have been made before the alleged seduction, and in not telling the jury the extent to which this corroboration must go as set forth in the statute. *State v. Reeves,* 97 Mo. 668; *State v. Wheeler,* 108 Mo. 658. (2) Instructions number 2 and number 3, given for the state, were erroneous. Instruction number 2, on the needed corroboration of prosecutrix, is within the very letter and mischief of the instruction criticised in *State v. Reeves,* 97 Mo. 668. It falls far short, in all its essential particulars, of the instruction on the same point approved by this court in *State v. Wheeler,* 108 Mo. 658. (3) The corroborative proof of the promise must be, if not equal to another witness, at least strongly corroborative. This is the rule in perjury, to which the statute in terms refers. Roscoe's Criminal Evidence [7 Ed.], p. 834 and *post; Commonwealth v. Parker,* 2 Cush. 212; *State v. Raymon,* 20 Iowa, 582. And the court should have so laid down the rule in this case. *State v. Reeves, supra; State v.*

*McCaskey*, 104 Mo. 644.    (4) Instruction number 3 is an elaborate treatise on the rule for weighing and measuring the degree of credit to be given each witness.    Among other things it says the jury should take into consideration "his or her character."    If it be conceded that, colloquially and loosely speaking, character and reputation are used synonymously, then it will also be conceded that the character and reputation of only one witness (the prosecutrix) was impeached by any testimony, whatever.    There being no testimony to base the instruction upon, in this particular, it was error to give it.    *State v. Primm*, 98 Mo. 368. (5) This instruction is further erroneous in submitting to the jury the proposition of law involved in the maxim *"falsus in uno, falsus in omnibus,"* because there was no evidence to base it on.    *Bank v. Murdock*, 62 Mo. 70; *State v. Elkins*, 63 Mo. 159; *White v. Maxey*, 64 Mo. 552; *State v. Palmer*, 88 Mo. 568.    (6) The mere fact that witnesses contradict each other does not warrant such an instruction.    *Shenuit v. Brueggestadt*, 8 Mo. App. 46.    (7) It was prejudicial error for the court below to allow, over timely objection by the defense, testimony by the state on the reputation of the prosecutrix for truth, when that trait of character was not in issue, and when no attack had been made by the defense on her reputation in that behalf.    *Rogers v. Troost*, 51 Mo. 470; *Dudley v. McClure*, 65 Mo. 241; *State v. Cooper*, 71 Mo. 436; 1 Thompson on Trials, sec. 550, and cases cited in notes.    (8) Specific acts of unchastity and of lascivious conduct, on the part of the prosecutrix, were admissible in evidence against her in this kind of a case.    This is the law in Missouri, and it is founded on both reason and authority.    *State v. Patterson*, 88 Mo. 88; *State v. Wheeler*, 94 Mo. 252. (9) The remarks of Mr. Hoffman, the prosecuting attorney, in his argument were not based on the record.

The defendant had not said what he had told the jury the defendant had positively sworn to on the stand. The court should have admonished and corrected him, and its failure to do so was error. *State v. Mahly*, 68 Mo. 316; *State v. Lee*, 66 Mo. 165; *State v. Reed*, 71 Mo. 200; *State v. Martin*, 74 Mo. 547; *Cross v. State*, 68 Ala. 476; *Brown v. Swinford*, 44 Wis. 282. (10) The remarks of Mr. Longan, in his closing address to the jury for the state, which are excepted to, were improper and constitute reversible error. He had no right to comment upon the defendant's not denying certain material things. R. S. 1889, sec. 4219; *State v. Graves*, 95 Mo. 510; *State v. Elmer*, 115 Mo. 401.

*R. F. Walker*, Attorney General, for the state.

(1) The instructions in this case correctly declare the law and are exceedingly liberal to defendant. *State v. Wheeler*, 108 Mo. 658. They cover the entire case made by the testimony, and, read together, as they must be, are not subject to the criticism of defendant. (2) The court committed no error in protecting the prosecuting witness against the savage fishing cross-examination of the defense. Defendant's counsel had exceeded the limit of legitimate cross-examination, and when stopped by the court were engaged in a "fishing expedition." (3) Defendant is now complaining that the witnesses were permitted to remain in the court room after the defendant had requested their exclusion. The record, however, shows that the defendant withdrew the request and it was at his instance that they were permitted to remain. (4) There was no error in permitting the prosecutrix and her mother to remain in the court room during the argument of counsel. (5) The evidence of the defendant's offer of marriage after his arrest and preliminary hearing, was

entirely competent.    It tended to establish defendant's guilt; was an overt act of admission of guilt.    *State v. Brandenburg*, 118 Mo. 181.    It was equivalent to the thief returning the stolen goods.    (6)  The facts in this case are much stronger, looking at them from the standpoint of the state, than were those in *State v. Fisher*, 27 S. W. Rep. 1109, in which case this court refused to reverse the case because of the insufficiency of the testimony.    (7)  The remarks of counsel for the state, in their argument to the jury, present no grounds. of error.

GANTT, P. J.—The defendant appeals from a conviction under an indictment preferred at the April term, 1892, of the criminal court of Pettis county, charging him with the seduction of Luella Hamm, an unmarried female of good repute, under the age of eighteen years.  He was duly arraigned and tried at the November term, 1893, and sentenced to six months' imprisonment in the county jail, and to pay a fine of $500.

There was abundant evidence to sustain the charge in the indictment, and no point is made on the indictment itself.    No good purpose can be subserved by spreading the details of the seduction upon the face of the reports, and we shall consider the errors assigned in this court, with sufficient of the evidence only to indicate the grounds of our conclusions.

I.    At the threshold of the trial, when the witnesses were sworn, the defendant asked and obtained an order for the separation of the witnesses.    Thereupon the prosecuting attorney requested that the father of the prosecutrix be exempted from the rule and permitted to remain in the court room, which was allowed by the court, and thereupon the record shows

that "the defendant withdrew his request and declined to accept the ruling of the court for the separation with the condition that the father be permitted to remain." This is assigned as error.

The point is not tenable, on two grounds. *First,* it was within the discretion of the trial court and it was entirely competent for the court to so frame its order as to meet the requirements of justice. *State v. Hughes,* 71 Mo. 633; 1 Bishop on Crim. Proc. [3 Ed.] sec. 1189. *Second.* The objection was waived by the act of defendant and no exception was saved to the order of the court.

II. When the mother of the prosecutrix was on the witness stand, the prosecuting attorney asked her if her daughter had any conversation with her about defendant, to which defendant very properly objected unless defendant was present. Mrs. Hamm then stated defendant was not present, but the court permitted her to answer and she testified that her daughter told her they were engaged to be married. Of course, this was error, but, when considered with defendant's own testimony on the stand, and his admissions in his letters, that he had promised to marry the prosecutrix, it is no ground for reversal. It was not prejudicial, under the facts of the case, but, it was clearly incompetent, standing alone, and we can not understand why it was asked, or, if asked, why admitted.

III. When the state was engaged in proving the reputation of the prosecutrix for chastity, the witnesses, as usual, displayed their inability to grasp the meaning of the phrase "general reputation for chastity,' and the learned judge, in endeavoring to educate them, went into a full explanation of the matter to the witness Idol, and closed it with this question: "Now do you know what that young woman's reputation is, generally, in the neighborhood in which she lives, for

virtue, truth and chastity?" And the witness answered he did, and that it was good. No other witness was asked as to her reputation for truth, and no effort was made to bolster her testimony. We are now asked to reverse this case because the word "truth" was included in the question with "virtue" and "chastity." In other words, the contention is that evidence of reputation for chastity alone was competent.

But a reading of the statute will show that it is not confined to chastity alone, but its language is "*of good repute.*" While her character for chastity is the predominant idea of the section, we see no error in proving *her general good repute* including her truthfulness. But if this were not so, the mere casual use of the word "truth" once in an examination of four or five witnesses as to her reputation for chastity is no ground for reversal.

IV. Again, it is assigned as error that the state was permitted to prove that, on the day after the preliminary trial, the defendant went to the home of the prosecutrix and informed her parents that he had come to marry the prosecutrix; "that he loved her all the time; that he would have married her according to promise, if it hadn't been for outside influence, but that kept him from marrying her, and after the preliminary trial in the evening he concluded to come over, and, if we were willing, they would get married, and drop the thing where it was." The statement was corroborative of the testimony of the prosecutrix of the previous promise to marry, and was evidence tending to prove the intercourse. Certainly it is in harmony with the common experience of mankind that defendant would not have offered to marry a woman who had borne a child out of wedlock, unless he had reason to believe he was the father of the child. It was an admission for the jury to weigh.

V. It is also assigned as error that the court permitted the prosecutrix and her mother to remain sitting within the bar of the court during the argument. The courts are public places. Justice is not administered in secret under our laws, and there is no evidence that the prosecutrix or her mother disturbed the court. The trial judges can safely be intrusted with the preservation of order and decorum in their own courts and it ought to be a flagrant case to require this court to take that burden upon itself. This assignment is without merit. In common with other citizens of the commonwealth, the prosecutrix and her mother had a right to remain in court, so long as they did not disturb its proprieties.

VI. During the cross-examination of the prosecutrix she denied sexual intercourse with any other man than defendant. Counsel for the defendant then propounded various questions to elicit the fact that she had, on one occasion, gone into a pasture with one Wymer and voluntarily laid down and raised up her dress, all of which she stoutly denied. At this point the court said to defendant's counsel, "Do you expect to introduce evidence from other witnesses of lewd acts by Miss Hamm with anyone else but the defendant? Is it your purpose to prove by other witnesses what you are now trying to get out of this witness? If this is your purpose, and you will so say to the court, the court will permit the examination to proceed; if not, the court will not permit this sort of an examination." To which defendant excepted as highly prejudicial, and, in response to the ruling of the court, one of his counsel, Mr. Lamm, stated that having *once* outlined his defense, it was under protest that he did it again, but that defendant did expect to and certainly would introduce evidence from other witnesses showing prior unchastity in the prosecutrix. In reply to this protest,

upon being required to state that they expected to offer this evidence, the court remarked, "Mr. Lamm, while I am judge of this court I shall protect any lady who is a witness, and I shall protect the lawyers, too. I will not permit fishing examination of this witness. I shall not permit this witness to be attacked and intimidated in my court." Counsel assigns these remarks of the judge as error.

It is evident that counsel elicited the last remark by his protest, which was entirely uncalled for. The court had simply asked if he intended to follow up his cross-examination by proofs of unchastity with others; if so, he could proceed; whereupon counsel precipitated a scene by protesting against the ruling which it was his duty to obey. There was nothing harsh or unusual or improper in the ruling and intimation of the court. There was nothing calling for the excited remarks and protest of the counsel and there is nothing in the record that shows that the court denied the fullest, freest cross-examination of the witness, and the utmost limit was allowed him in the examination of his own witnesses to prove the prior unchastity. The assignment is more dramatic than substantial.

A similar complaint is made of another statement made by the court. When Mrs. Hamm, the mother of the prosecutrix, was on the stand, she had testified to the constant visits of defendant to her daughter; and was asked: "Well, from what you saw and observed there, what was the conclusion you reached?" To which defendant objected as not eliciting any fact, which objection was overruled and defendant excepted; but before the witness answered, the counsel for the state withdrew the question, and the learned judge *stated he was in error*. At this juncture, Mr. Lamm assumed the prerogative of advising the judge how to proceed in the further progress of the trial, as follows:

"It might be well, if the court please, to avoid any misunderstanding, to have the questions read hereafter, or have the substance of them stated whenever objections are made, that the court may fully understand the point to the objection. We have no desire to lead the court into error." To which the court replied: "I believe you attorneys for the defendant desire to lead me into error." To this remark of the court defendant's counsel objected as calculated to prejudice the defendant and his counsel before the jury.

The administration of justice by the courts is the highest function the state performs for its citizens, and it requires and demands wisdom, justice and moderation to a high degree in both court and counsel. There are reciprocal duties which must be observed by each, if the tribunals are to preserve the respect of the suitors therein and the public. Counsel have rights which courts must respect. The independence of the bar is essential to that full and free discussion without which courts must grope in the dark; and no honorable counsel ought ever to forget the respect due the court as the representative of the law. It is always disagreeable to deal with an exception involving the personal behavior of the judge or counsel. In this case counsel feel aggrieved because the court expressed the opinion that they would be willing to lead him into error, but they overlook the insinuation in their remarks to the court. By suggesting that the stenographer read over the question each time to the court, they covertly intimated that the court's faculty of hearing was defective or his powers of comprehension dulled in some way, and this suggestion was entirely gratuitous. The question had been withdrawn, and when counsel indulged in this advice to the judge he was not pursuing his case, and, doubtless, the judge considered that he was entirely competent to direct the

proceedings in his court and when this uncalled for remark volunteered the assurance that they did not desire to lead the court into error, he replied by saying he believed they did so desire.

Such passages add nothing to the dignity of the court or the usefulness of the bar, but this one had nothing to do with the case in hand, and we find nothing in the rulings of the learned judge that in the slightest degree indicate that it affected him in according to the defendant every right to which the law entitled him. It was not a question whether the counsel would or would not lead the court astray, and counsel having tendered the court that issue outside of the case on trial, and extorted his opinion of their professional candor, must abide it, as that case is not before us for our consideration. We think this discussion has properly no place in this record.

VII. The instructions were well drawn and as favorable to defendant as the law would permit.

V.III. The last and remaining objection pertains to the remarks of the prosecuting attorney, Mr. Hoffman, and Mr. Longan, the private counsel, who assisted in the trial. It is complained that Mr. Hoffman, in his address to the jury, said, in speaking of Miss Hamm, the prosecutrix: "She was under the age of eighteen years when, according to the defendant's own positive testimony, he had sexual intercourse with her." And again: "The defendant said on the witness stand that he had sexual intercourse with Luella B. Hamm."

The force of this point is hardly perceivable. Whitworth, the defendant, was on the stand, and, in answer to his counsel, testified that he promised to marry Luella Hamm along about the first of August, 1891. He said: "She told me that she was in a family way; she thought I was the cause of it or *I was the one*, and I told her if she was an honest girl I would

marry her, *and I was the one.*" Again he testified: "She told me that I must come back and marry her, and I told her that was what I come back for." In one of his letters he writes: "Ella, you said that I ruined you. I hate it so bad, but if you can get rid of it, I will be down some time in Christmas; but Ella, don't say anything about it." If these statements do not amount to a positive admission of sexual intercourse, it would be difficult to find language that would convey the idea.

When Mr. Longan was making his address to the jury he used this language: "We have the defendant in court admitting that he promised to marry Luella B. Hamm; we have the defendant in court not denying that he seduced the prosecuting witness; we have the defendant in court not denying that he had sexual intercourse with the prosecuting witness; we have the defendant in court not denying that he debauched the prosecuting witness." Great stress is laid upon the words "not denying." Of course, if defendant had not testified and admitted that he promised to marry the prosecuting witness; if he had not admitted that "he was the one" who had debauched her, it would have been error for the counsel to have made these statements, but with such evidence in the record and the trial court admonishing Mr. Longan to keep within the record and the fact that Mr. Longan did not in any manner offend after his attention was called to his statements, we think there was no such violation of defendant's rights as would justify this court in reversing this cause.

There are some other trivial matters in the record, but none affecting the merits of the case or prejudicial to defendant. The judgment is affirmed. All of this division concur.