255 S.W.2d 826 (1953)
STATE
v.
McHARNESS.
No. 43422.
Supreme Court of Missouri, Division No. 1.
February 9, 1953.
Motion for Rehearing or to Transfer to Denied March 9, 1953.
*827 Kenneth K. Simon, Kansas City, for appellant.
J. E. Taylor, Atty. Gen., and Frank W. Hayes, Asst. Atty. Gen., for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied March 9, 1953.
VAN OSDOL, Commissioner.
Defendant-appellant, Fannie McHarness, was found guilty of murder in the second degree and her punishment was assessed by the jury at fifty years imprisonment in the state penitentiary. Herein upon appeal from the ensuing judgment and sentence, appellant has filed no brief, and we shall examine the assignments of error set forth in her motion for a new trial in order to determine the disposition of the case upon review.
Before we approach a consideration of the assignments of error in the trial of the case, we shall examine an assignment that the trial court erred in refusing to quash the panel of veniremen from which the trial jury was selected.
The instant case was tried March 3, 1952, by a jury selected from a panel of veniremen drawn from a list of persons qualified for jury service, the list having been compiled in accordance with Section 497.130 RSMo 1949, V.A.M.S. The Section 497.130 (and Section 497.010) originally a part of the Act of 1947 applicable to juries in Jackson County, Vol. I, Laws of Missouri 1947, pp. 342-350, was repealed, and a new Section 497.130 (and a new Section 497.010) enacted, effective October 9, 1951. Laws of Missouri 1951, pp. 562-563. The repeal and re-enactment of Section 497.130 (and Section 497.010) were in effect an amendment of the Act of 1947. Defendant-appellant filed her motion to quash the panel or to challenge the array on the stated grounds that the panel of veniremen was drawn and selected from a list compiled under the old, now repealed and nonexisting statute, and that, consequently, the panel, from which the trial jury in the instant case was selected, was illegal.
The new Section 497.130 provides that, after it is ascertained that a county contains the prescribed number of inhabitants (see the new Section 497.010), the Board of Jury Supervisors shall cause a complete list to be made "immediately." However, the evidence shows that, from a practical standpoint, the list such as required under the new Section 497.130 cannot be compiled without laborious and painstaking examinations of the assessor's books and the list of registered voters, and the further investigation as to qualifications of the persons to be included in the compilation. Surely the Legislature never contemplated such a list could be made available for use "immediately" upon the effective date of the amendment. According to the evidence introduced upon the hearing of the motion to quash, the Jury Commissioner of Jackson County under the supervision of the Board of Jury Supervisors, even before but in contemplation of the possible repeal of the old and the enactment of the new Section 497.130 in 1951, had been, and was *828 at the time of the hearing, engaged in compiling a list of persons qualified under the provisions of the new Section 497.130. This labor had been diligently pursued, when possible, but had not been completed at the time of the hearing of the motion to quash and the trial of the instant case.
Referring to the unrepealed Section 497.140, subd. 2, RSMo 1949, V.A.M.S., it will be observed the Legislature contemplated that time is required to complete the compilation of a new list of qualified jurors, and so the Legislature in the Act of 1947 provided that the list in effect at the time of the enactment of the Act of 1947 should be continued in use until a list could be made ready for use under the then new, but now repealed, Section 497.130. Inasmuch as the new Section 497.130, enacted in 1951, is a re-enactment of a part of the Act of 1947 (now Chapter 497, RS Mo 1949, V.A.M.S.) applicable to juries in Jackson County, and the Section 497.140, supra, of the Act of 1947 was not amended or repealed, we are of the opinion it was intended that Section 497.140 should become applicable to the new Section 497.130 enacted in 1951. Otherwise stated, in ruling the instant assignment of error, we are of the opinion the amendment should be considered as a part of the original act as if it had always been contained therein. Turner v. Missouri-Kansas-Texas R. Co., 346 Mo. 28, 142 S.W.2d 455, 129 A.L.R. 829; 59 C.J., § 647, pp. 1096-1097.
We now turn to a consideration of the assignments of the trial court's error in the trial of the case.
There was substantial evidence introduced tending to show that defendant resided with the deceased, her husband, and the aged mother of deceased, in a one-story frame house fronting southwardly on East 29th Street in Kansas City. At about eight o'clock in the evening of October 27, 1951, the mother of deceased retired to her bedroom at the rear (north) end of the building. At that time defendant's husband was sitting in a rocking chair in the dining (middle) room and was looking southwardly through the living (south-front) room at a television program on a television set which was in a position near the far (south-front) wall of the living room.
At approximately three o'clock in the morning of October 28th, the deceased's mother wakened and observed that the lights in the dining and living rooms were on. She investigated and found her son, deceased, defendant's husband, apparently unconscious in a slumped or reclining position in the rocking chair. The mother ran to the home of a neighbor, who called the police. It was ascertained that the son was dead. He had suffered a fatal gunshot wound. An autopsy disclosed that a .22-caliber bullet had entered the back part of deceased's head. The fatal bullet had gone through the brain and fractured the frontal sinus, but had rebounded and remained lodged in the anterior lobe of the brain.
The police, in searching the house, discovered two notes in the handwriting of defendant. One of the notes contained the sentence, "Frank has done me dirty and talked about me and told lies on me, so I put him out of the way so he couldn't do anyone else dirty."
Defendant was apprehended at about one o'clock in the afternoon of October 28th at the home of an acquaintance residing on Indiana Street in Kansas City. When arrested, defendant admitted she had shot her husband. In a written confession, defendant stated that, while her husband was enjoying a television program, she had procured her husband's rifle, and, walking up behind him as he sat in the rocking chair, placed the barrel of the rifle near the back of his head and fired the fatal shot. After her arrest, defendant had returned with the officers to the home on East 29th and had shown the officers where she had hidden the rifle. At the trial, however, defendant's testimony supported the theories of self-defense and accidental homicide. She testified that, during the evening of October 27th, her husband had demanded that she accompany him and act as an accomplice in the commission of robbery, and, upon her refusal, he struck her with an iron stove-poker; that she got the rifle to protect herself; and that her husband again threatened her *829 with the poker, and the rifle was accidentally discharged.
The evidence was substantial in supporting the submission of murder in the first degree. There was evidence sufficient to justify the conclusion that defendant acted "deliberately" in firing the fatal shot. And the trial court correctly instructed the jury on murder in the second degree, and manslaughter. But, if it were assumed the evidence did not support a finding of "deliberation," defendant is in no position to complain of the trial court's submission of murder in the first degree (including the essential element of "deliberation"), since the jury found defendant guilty of murder in the second degree. State v. Rodgers, Mo.Sup., 102 S.W.2d 566; State v. Jenkins, 327 Mo. 326, 37 S.W.2d 433; State v. Lloyd, Mo. Sup., 263 S.W. 212.
The punishment assessed, in and of itself, does not demonstrate the passion and prejudice of the jury. The fifty-year term assessed by the jury was within the limits of the punishment provided by the Legislature for murder in the second degree. Section 559.030 RSMo 1949, V.A. M.S. It was the jury's function primarily to assess defendant's punishment within the statutory limits, subject to the trial court's discretionary power to reduce the punishment so assessed. Section 546.430 RSMo 1949, V.A.M.S. The evidence introduced by the State was substantial in tending to show defendant, without justification or excuse, with premeditation and actuated by a malicious and vindictive purpose to kill, destroyed the life of her husband. In these circumstances we cannot say that the trial court abused its discretion in refusing to reduce the duration of the term of the punishment assessed by the jury. State v. Rizor, 353 Mo. 368, 182 S.W.2d 525; State v. Mahan, Mo.Sup., 226 S.W.2d 593.
We believe there was no error or abuse of discretion committed by the trial court in admitting into evidence a sketch or plan of the house and photographs of the interior of the house, although the photographs disclosed the body of the deceased and a discoloration or stain (apparently blood) on the rug on the floor directly below deceased's head. There was evidence tending to show that, when the photographs were taken, the body had not been disturbed and the articles of furniture had not been moved since the homicide was committed. The photographs showed the arrangement of the interior of the house, the positions of various articles of furniture in the dining room and living room, including the stove and the rocking chair occupied by deceased and the chair's position in relation to the television set at the far side of the living room, as well as the position of the deceased's body lying in the chair. One of the photographs also showed the iron poker which defendant-appellant had said deceased was using in the assault upon her. The photograph disclosed the poker had been placed in orderly fashion on the metallic mat beneath the stove. The plat or sketch showed the arrangement of all of the rooms of the house. (The trial court directed the jury to disregard the arrangement of the furniture as shown on the plat or sketch. This was because it was not shown that, when the sketch was made, the articles of furniture were arranged as they were at the time of the homicide.) The sketch was drawn to scale. The sketch and photographs were of value in tending to show physical conditions existing, and were of assistance to the jury in enabling a better understanding of the facts and circumstances detailed by the witnesses and of the bearing of the facts and circumstances upon the issues of the case. State v. O'Reilly, 126 Mo. 597, 29 S.W. 577; State v. McGee, 336 Mo. 1082, 83 S.W.2d 98; State v. Finn, Mo.Sup., 243 S.W.2d 67.
Relating to the confession which the trial court admitted into evidence Upon defendant's suggestion the trial court made a preliminary inquiry (without the presence of the jury) in which inquiry evidence was introduced on the part of the State that no threats or promises were used or made to defendant; and that defendant was apprised of her constitutional rights including her right to consult counsel and friends. Defendant testified that she was *830 in no way threatened or mistreated and was made no promise or offered any inducement, although she denied she had been advised of her constitutional rights. The evidence was sufficient in tending to show the confession was in fact voluntary and to justify the trial court's action in admitting the confession into evidence. State v. Gibilterra, 342 Mo. 577, 116 S.W. 2d 88; State v. Hutsel, 357 Mo. 386, 208 S.W.2d 227.
While on the witness stand defendant was asked by State's counsel, "Fannie, isn't it a fact your attorney told you if you said you got hit by your husband you would get off with a lighter sentence?" After defendant had answered in the negative, counsel for defendant moved that the court declare a mistrial "because of the prejudicial question." The trial judge stated to State's counsel, "that was very improper," and further said, "I am going to instruct the jury to disregard the question and answer if there was one made, the jury will not be discharged, it will be stricken from the record and not regarded by the jury at all in any way * * *." Error is assigned in refusing to declare a mistrial. In view of the trial court's prompt action in reprimanding State's counsel and in instructing the jury to disregard the question, we believe the occurrence was not so prejudicial as to require a new trial. The question of declaring a mistrial is largely a matter for the trial court's discretionary action, and where, as here, there was no apparent abuse of discretion we do not interfere. State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877; State v. Mahan, supra.
The trial court instructed the jury on defendant's theories of self-defense and accidental homicide. It was shown in evidence that deceased, forty-five years old, was physically large and powerful; and that defendant, fifty-two years old, was a small and rather frail woman. In the instruction on self-defense, the trial court told the jury that, in determining the questions whether defendant had reasonable cause to believe and believed deceased was about to take her life or do her great bodily harm, the jury should consider "all the evidence in the case." The trial court did not err in refusing to single out and give special prominence to portions of the evidence by instructing that, in passing on the question of the reasonableness of defendant's apprehension of danger, "the jury might take into consideration the relative difference in age, health, and strength of deceased" and defendant. Nor did the trial court err in refusing to submit the defense of insanity. There was testimony that defendant had become intensely angry at her husband and his mother; and that, at times in the afternoon of October 28th after the homicide, defendant appeared to be in a dazed condition. There was no substantial evidence introduced tending to show that defendant was insane in the sense cognizable by the criminal law. The trial court's refusal to submit the defense of insanity is supported by the decisions of this court. State v. Meier, Mo.Sup., 152 S.W.2d 59; State v. Jackson, 346 Mo. 474, 142 S.W.2d 45.
Defendant in her motion for a new trial also assigned that the verdict of the jury was against the law and the evidence; was against the evidence; and was against the greater weight of the evidence. These assignments are too general, and are insufficient in preserving anything for our review. State v. Boyer, 342 Mo. 64, 112 S.W.2d 575; State v. Conway, 348 Mo. 580, 154 S.W.2d 128; State v. Grove, Mo.Sup., 204 S.W.2d 757; State v. Grubbs, 358 Mo. 323, 214 S.W.2d 435; Section 547.030 RSMo 1949, V.A.M.S.
We have examined the record proper. The information was sufficient, and the verdict was in proper form and responsive. Allocution was afforded, and judgment and sentence duly pronounced.
We are of the opinion the judgment should be affirmed, and it is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.