STATE of Missouri, Respondent,

v.

George William DAEGELE, Appellant.

No. 45859.

Supreme Court of Missouri,
Division No. 2.

May 13, 1957.

No attorney for appellant.

John M. Dalton, Atty. Gen., Russell S. Noblet, Richard W. Dahms, Asst. Attys. Gen., for respondent.

EAGER, Presiding Judge.

Defendant, George W. Daegele, was convicted of molesting a named female child, twelve years of age, as charged by amended information under the provisions of Section 563.160, RSMo 1949, V.A.M.S. A change of venue had been taken by defendant from Johnson County to Lafayette County. Defendant was sentenced to imprisonment for five years, in accordance with the verdict of the jury, and he has appealed. We shall merely refer to the child in question as the prosecutrix; her name sufficiently appears throughout the record.

Since appellant has filed no brief here, we will consider the formal parts of the record, and such assignments of the motion for new trial as are sufficiently specific under our Rule 27.20, 42 V.A.M.S. At the outset we eliminate as insufficient the assignments that the verdict is against the greater weight of the credible evidence (State v. Stucker, 352 Mo. 1056, 180 S.W.2d 719; State v. McHarness, Mo., 255 S.W.2d 826), and that the verdict is contrary to law (State v. McHarness, Mo., 255 S.W.2d 826; State v. Conway, 348 Mo. 580, 154 S.W.2d 128). The other contentions of error will appear as they are discussed in the opinion.

We shall first outline, as briefly as we may, the evidence of the state. On September 19, 1955, sundry children in Warrensburg were on their way back to school after the lunch period, and it was raining lightly; as the prosecutrix approached a street intersection in a residential district, a Ford car turned the corner in front of her

and came to a rather sudden stop. A man got out, pulling a plastic raincoat over his head, and approached the girl; he told her that he worked for an insurance company and that he had a check for her father which "couldn't wait"; that she should get in his car and that they would go for the check. As the girl proceeded, slowly, to his car and got in it, the man walked up into the yard of the residence on the corner, where he was hidden momentarily from the girl; however, he came back almost immediately, got into the car, and "zoomed" off. This man was positively identified as the defendant by two adult witnesses who had observed these occurrences from a porch approximately 40 feet from his car; one of these witnesses noted and wrote down the license number of his car.

At this point we are forced to recite the facts in more detail than we would normally do in a case of this character, because of the contention that an instruction is broader than the evidence and also broader than the information. Defendant drove south of Warrensburg on Highway 13 for some distance, and turned off on a side road; the prosecutrix testified that defendant there tried to kiss her, that she slapped him, that he then pulled her leg behind his back and "started forward to pull down my pants"; however, the prosecutrix succeeded in getting her leg down, pulled down her skirt, and began to cry. Defendant then put the car in motion, and went back to Highway 13, where he drove northward, slowing down to about 10 miles an hour; while so doing he opened his trousers, exposed himself, and prevailed upon the prosecutrix to rub what he called "the stick," upon his statement she had to do so in order to get back to school. After a short time she "got mad" and quit, and as defendant turned into another side road, she jumped out of the car, hailed a passing truck, and was taken to a filling station on the edge of Warrensburg from which the Highway Patrol was called. From pictures, in person at the jail in Warrensburg, and in person at the trial,

the prosecutrix identified the defendant as the man who had committed these acts.

The locale of all the offenses was shown to be in Johnson County. The defendant was brought back from Dayton, Ohio, by extradition. One of the deputy sheriffs who returned him testified that he denied the crime, but that, on the return trip, he asked if the girl was injured "when she jumped from the car," stating further that he had liability insurance on the car; this deputy further stated that defendant had been told nothing, in his presence, about the girl jumping from the car, and that defendant had been continuously in his presence.

The evidence on behalf of defendant was to the effect that the defendant was in the circuit court in Kansas City, Missouri, on the morning in question and that he was also in Kansas City in the early afternoon of that day. The details are here immaterial; from this evidence, if believed, the jury might conceivably have found that defendant could not have been in Warrensburg, and at the other stated locations in Johnson County, at the times when the offense or offenses were actually committed. Certain details of that defense testimony will be referred to later.

We shall dispose first of defendant's last assignment that his motions for discharge should have been sustained. Considered broadly as a contention that there was no substantial evidence to support the verdict, the assignment is perhaps sufficient. State v. Tharp, 334 Mo. 46, 64 S.W.2d 249, 253; State v. Henderson, 356 Mo. 1072, 204 S.W.2d 774, 777. It is entirely clear to us that the state's evidence, as outlined in our recital of the facts, did constitute substantial evidence of the offense charged, and that, if believed, it fully warranted a conviction under § 563.160, supra. The point merits no further attention. See, generally, State v. Kornegger, 363 Mo. 968, 255 S.W. 2d 765. Upon such objection, the state's evidence, with the legitimate favorable inferences therefrom, is to be taken as true,

and defendant's contradictory evidence disregarded. State v. Hinojosa, Mo., 242 S.W. 2d 1.

■■ In the opening statement of the prosecution counsel stated that three witnesses identified pictures of the defendant taken from police files. No objection was made at the time, but at the conclusion of the entire statement counsel for defendant objected and moved that the jury be discharged. The court sustained the objection and offered to instruct the jury to disregard the statement; counsel declined this offer, stating that such action would only serve to call further attention to the matter. The court, at this point, cautioned counsel that they should not thereafter "refer to any police file." We thus see that defendant stood strictly on his motion to discharge, declining all other relief. The statement was improper, but in view of the fact that the trial court heard it, considered its probable effect, and was in much better position than are we to judge of its effect, we decline to hold that the failure to discharge the jury was error. It is hardly necessary to say that in such matters the trial court properly has a wide discretion which will not be interfered with unless an abuse appears. State v. Green, Mo., 292 S.W.2d 283, 288.

■ We next consider together the complaints that the trial court erred in permitting the prosecutrix to be present in a prominent position in the courtroom when not testifying, and in permitting her parents to be present during her testimony. The allegations of a motion for new trial are not self-proving. The record does not show that the prosecutrix was present, in a "prominent position" or otherwise, except when she was testifying, nor that her parents were present at all; the court did rule, however, that the prosecutrix could remain in the courtroom and that her parents might be present unless they were subpoenaed as witnesses; they had not been subpoenaed and did not testify. Aside from that state of the record, the exclusion

or nonexclusion of witnesses in Missouri courts has been a matter wholly within the discretion of the trial court since early days. State v. Hughes, 71 Mo. 633; King v. State, 1 Mo. 717; State v. Fitzsimmons, 30 Mo. 236. It is stated in the Hughes case that the rule " * * * may be so molded as to meet the requirements of justice in each particular case." Of the later cases, see: State v. Whitworth, 126 Mo. 573, 29 S.W. 595; State v. Lee, Mo. App., 298 S.W. 1044; State v. Compton, 317 Mo. 475, 296 S.W. 137; State v. Tummons, Mo., 34 S.W.2d 122. The Hughes case, supra, involved prosecuting witnesses, and the Whitworth case, supra, the father of a prosecutrix. The point is rejected in both particulars.

■ We next consider the contention that the court erred in permitting defendant's witness Shepard, a lawyer, to testify upon cross-examination and over objection, that he was representing defendant in a criminal case in Jackson County, in that this informed the jury that defendant "was charged with another crime." Shepard testified that on direct examination that he had appeared with defendant as his counsel in the circuit court in Kansas City on the morning of September 19, 1955; much of his testimony concerned the precise time when the witness and defendant were there together. On cross-examination counsel for the state asked the witness whether this was in the civil or criminal division. The objection made was that this "wouldn't be material." The court overruled the objection and the witness answered that "it was a criminal action." The error now assigned is of more significance than the objection made at the trial. If we assume, however, that the objection as made was sufficient, which we doubt, we hold that the admission of the answer was not prejudicial, in the light of other evidence. The next witness for defendant was one Nick DePasco who testified that he was a professional bondsman, that he was with defendant at the courthouse in Kansas City on the morning in question, that he was

then on a bond for the defendant, and that defendant was required to be in court on that day. We hold that defendant thus voluntarily introduced evidence which raised at least a fair, if not a necessary, inference that defendant was in court in Kansas City on another criminal charge, and that the answer of the witness Shepard should not be held to have been prejudicial.

■ Trooper Shelton Abney of the State Highway Patrol had made the initial investigation and testified for the state. When asked at one point what additional investigation he had made, particularly concerning the matter of identity, he stated that he obtained certain photographs, one of which was of "the suspect * * * from the Kansas City Police Department * * *." The answer was objected to at that point, the objection was immediately sustained and the court stated that "the jury will disregard the latter part of the answer." No further relief was asked. The court did more than it was asked to do, and while the voluntary remark of the witness was improper, certainly no error appears. See State v. Rhoden, Mo., 243 S.W.2d 75; State v. Breeden, Mo., 180 S.W.2d 684.

■ Defendant's counsel complained in two respects of supposed separations of the jury. The case was tried and the verdict returned in one day. One of these assignments is that a colored juror, Ben Boyd, was not permitted to eat lunch or have coffee at the "same table" with the other jurors. Evidence was taken on the hearing of the motion for new trial and there is absolutely no support in the record for this assignment. Different booths in a restaurant were necessarily used, but the juror in question was treated, and seated, like all the others. The other assignment is based on the fact that when the jurors went to the rest room at a recess, the foreman, Mr. Kirk, was the last one out and he found that the others had disappeared; as he emerged he met counsel for defendant and the prosecuting attorney, and asked them where the jury had gone; he got no reply or a noncommittal reply, so he assumed that they had gone across the street "for a cup of coffee," and he started in that direction. While still in the courthouse he met a lawyer whom he knew and remarked, "Bill, I've lost my buddies." This lawyer told him that the others had gone to the restaurant across the street; Mr. Kirk immediately proceeded there and joined the others; he found, in fact, that the deputy sheriff was just starting back after him. This juror had in nowise discussed the case with anyone. The foregoing recital covers the "separation" in its entirety. Our statutes, Sections 546.230 and 546.240, RSMo 1949, V.A.M.S., contemplate generally that the jury in a felony case shall be kept together after it is empaneled, except by agreement of the prosecuting attorney and the defendant; after submission the rule is even stricter, but no such question is involved here. The reason and purpose of the rule is to prevent the jurors from being subjected to any improper influences; but it is obvious that the rule must be sensibly applied, and that it is not always possible to "comply literally." State v. Ferguson, Mo., 133 S.W.2d 1023, 1025. It was there said that "* * * A sensible and substantial compliance with the statutory mandate must be considered sufficient. * * *" Certain of the circumstances of that case were rather similar to those here. See also, State v. Bayless, 362 Mo. 109, 240 S.W.2d 114. The state here assuredly met any burden it may have had to negative the exercise of any improper influence, and the trial court necessarily so ruled in overruling the motion for new trial.

■ It is next insisted that defendant was "prejudiced" by being tried on the present charge when he was extradited for "felonious assault." The great weight of authority is that, in interstate extraditions (as contrasted with international extraditions), one may lawfully be tried for a crime other than that for which he was extradited. State v. Patterson, 116 Mo.

505, 22 S.W. 696; State v. Walker, 119 Mo. 467, 24 S.W. 1011; 21 A.L.R. 1418, note; Lascelles v. State of Georgia, 148 U.S. 537, 13 S.Ct. 687, 37 L.Ed. 549. Moreover, the exhibits here disclose that the Petition for Requisition and the Requisition charged defendant with the offense of molesting a minor with immoral intent; the complaint and warrant charged the same offense in much detail. These documents comprised the Missouri moving papers. It is wholly immaterial that the Ohio authorities, in granting the request, saw fit to refer to the charge as "felonious assault." Thus, for both of the above reasons, the contention is without merit.

■ In criminal appeals where there is no brief for defendant this court always considers the sufficiency of the information; here, however, defendant specifically asserted that "the information fails to allege a crime * * *." The assignment, as such, is wholly insufficient under Rule 27.20, but we consider it at this point in view of our universal practice. The amended information alleged that defendant took indecent and improper liberties with the prosecutrix by performing the act of exposure described, and having the prosecutrix perform the act already related; it further alleged a felonious intent to molest and annoy, and that the acts were done "unlawfully, willfully and feloniously." This charge brings the offense within any one (or all) of several alternative classes of prohibited conduct set out in the statute (§ 563.160, supra), and the amended information is clearly sufficient. See, also, State v. Kornegger, 363 Mo. 968, 255 S.W.2d 765.

■ Complaint is made of Instruction No. 2, in that: (a) it "assumed facts"; (b) that there was no evidence to sustain the submission that defendant endeavored to remove prosecutrix's pants; (c) that there was no "allegation" of such; and, (d) that the instruction was broader than the information and broader than the evidence. The assignment of "assuming facts" is wholly insufficient and is disregarded. The testimony of the prosecutrix, already outlined and not to be repeated, was ample to sustain a submission of the "endeavor to remove the pants of * * *." We rule that against defendant, and this rules also the assignment that the instruction was broader than the evidence. The only remaining question is whether this submission was erroneous as broader than the information. The instruction submits in the *conjunctive* the felonious taking of indecent liberties with the prosecutrix, the endeavor to remove her pants, and the specific act of exposure already described. The amended information charged the felonious taking of indecent liberties by the exposure (specifically alleged); it did not allege the endeavor to remove the pants. We have determined that by the conjunctive submission in Instruction No. 2, the state merely assumed an added burden, and that the jury was certainly not permitted to convict on anything less or different from that which was charged in the amended information. The evidence concerning the incident in question went in without objection and the reference complained of in the instruction was not in itself prejudicial. On the effect of the conjunctive submission, and regarding the assignment generally, see: State v. Bunyard, 253 Mo. 347, 161 S.W. 756; State v. Randall, Mo., 248 S.W. 2d 860; State v. Futrell, 329 Mo. 961, 46 S.W.2d 588. If the jury is not misled or a defective information cured, and the state has merely assumed an added burden, the defendant cannot properly complain. Here it is clear that the jury was required to, and did, find defendant guilty of everything charged in the information, and it was not misled. The point is denied.

■ Defendant also complains of Instruction No. 5 as a comment upon the evidence and as casting the burden of proof upon defendant. This instruction was as follows: "The Court instructs the jury that if there is any evidence before you that raises in your minds a reasonable doubt as to the presence of the defendant at the time

and place where the crime is charged to have been committed (if you find a crime was committed), you will acquit the defendant." Specifically, defendant complains of the words "if there is any evidence." In this case there was evidence which made it proper to give an "alibi" instruction, although a rather close time element was involved in the testimony of defendant's witnesses. This particular instruction has been approved in: State v. Berkowitz, 325 Mo. 519, 29 S.W.2d 150, 155; State v. Davis, 186 Mo. 533, 85 S.W. 354, and State v. Brown, 247 Mo. 715, 153 S.W. 1027, 1030-1031. It was not error to give it here.

■ In the next assignment defendant contends that the verdict was the result of passion and prejudice because of the combination of: (a) "repeated" references to police pictures; (b) the testimony of witness Shepard concerning another criminal charge; (c) permitting the witness DePasco to testify that defendant was on bond for another criminal charge; and, (d) allowing the prosecutrix to be in a prominent position throughout the trial. We have specifically considered (a), (b) and (d) separately, and have held that no error was there committed. The witness DePasco was defendant's own witness; defendant's counsel brought out, by specific questions, that DePasco was "on a bond for the defendant" on September 19, 1955. We fail to see the point in claiming any prejudice from that testimony. We see nothing from the record to convince us that a combination of (a), (b) and (d) (each of which we have held to be either proper or nonprejudicial) caused a verdict of guilty because of passion and prejudice inspired thereby. The motion for new trial points out nothing, but merely makes the bare statement. In fact, by putting on the witness DePasco, defendant appears to have joined in the proof of a prior criminal charge. The mere fact that the maximum penalty was assessed cannot be held to indicate that the verdict was the result of passion and prejudice. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 109; State v. Copeland, 335 Mo.

140, 71 S.W.2d 746. The trial court necessarily considered this point on the motion for new trial, and in its discretion, overruled the motion. The contention is also denied here.

■ The last contention is that the court erred in admitting in evidence a photostatic copy of an application for a 1955 Missouri Motor Vehicle license No. B 21-946 for a 1953 Ford car, executed by one George W. Daegele; as shown by other evidence, that was the license number of the car in which the prosecutrix was driven out of Warrensburg. The photostatic copy was offered in evidence with an identifying affidavit of the Supervisor of Motor Vehicle Registration, Department of Revenue. The only objections which were made at the trial and preserved in the motion for new trial are: (a) that the photostatic copy was not the best evidence; and, (b) that there was no proof that the George W. Daegele therein named was the same person as the defendant. So far as the latter objection is concerned, it goes merely to the weight of the evidence, and the question was one for the jury; we note also that the address given on the application was 4112 Paseo, Kansas City, Missouri, which was the address of defendant as given by one of his own witnesses at the trial. Certainly that connection, along with the name, would make the exhibit admissible as against that objection. On the other point, the Missouri courts have, in various instances, been rather liberal in admitting copies which are, in fact, duplicate originals. Union Trust Co. v. Wyatt, Mo., 58 S.W.2d 708; Schroer v. Schroer, Mo., 248 S.W.2d 617. There is no objection before us raising a lack of proper identification of this exhibit. The state cites Sections 109.120 and 109.130, RSMo 1949, V.A.M.S., as authority for considering this exhibit as an original. Those statutes were enacted in the Laws of 1945 (pages 1427–1428), primarily to authorize the destruction of public and private records upon the preservation of accurate copies; the language of § 109.130, supra, appears broad enough to

make a photostatic copy, properly identified, an original "for all purposes," if there is also a showing of a compliance with the requirements of § 109.120, which contemplates that the head of a department or business "may cause" the reproduction of any or all of its records. We doubt the applicability of those statutes to this particular instance. There was evidence, however, that the patrolman, Abney, got the license number of the car in question from one of the witnesses on the afternoon of the occurrence, that he checked by radio "to find out who the car belonged to," that a general pick-up order was put out for that person, and a warrant was issued. None of this evidence was objected to. From this evidence the jury could draw a fair inference that the defendant was the owner of the car. A deputy sheriff who participated in the investigation also testified, without objection, that he obtained the photostatic copy of the registration (the exhibit in controversy, the date, license number, and amount of fee being stamped across the top) from the Supervisor of Motor Vehicle Registration at Jefferson City, and that he saw the original registration there on file; then came the following: "Q. Is that the way that you ascertained that the owner of that vehicle and that license number was George W. Daegele? A. Is that the manner in which we ascertained it? Q. Yes, from Jefferson City, Missouri? A. Yes, sir, that's right, through the State Highway Patrol." Although the latter questions and answers are a little awkward in form, the meaning is reasonably clear. There was at least a fair inference from evidence admitted without objection that the defendant was the registered owner of the car bearing the license number in question. When we also consider that the whole matter of ownership went merely to the question of identification, and that the disputed exhibit was merely corroboratory of three positive personal identifications of the defendant, we have no hesitancy in holding that the admission of the exhibit in question, if error,

was not prejudicial to the substantial interests of the defendant.

The sufficiency of the amended information has already been considered and determined. The verdict is sufficient, allocution was duly accorded, the judgment is responsive to the verdict and is in due form. The judgment of the circuit court is affirmed.

All concur.